ROBERT L. HODGSON, APPELLANT, V. VERNON GLADEM, APPELLEE.

193 N. W. 2d 779

Filed January 28, 1972.   No. 38009.

Jewell, Otte, Pollock & Gatz, for appellant.

Kenneth H. Elson and James D. Livingston, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This action arises from a collision which occurred on May 27, 1969, between two motor vehicles at an intersection of two county roads. ' The plaintiff prayed for damages caused to his vehicle by the collision. Defendant filed a cross-petition asking recovery for personal injuries and damages to his vehicle. At the conclusion of all the evidence the defendant renewed an earlier motion for a directed verdict against the plaintiff on the grounds of plaintiff's contributory negligence. The plaintiff moved for the dismissal of the defendant's cross-petition on the grounds of the defendant's negligence. The court found both parties guilty of negligence more than slight as a matter of law and dismissed both the petition and cross-petition. The plaintiff appealed to this court. We

affirm the judgment of the district court. We have noted the date of the accident to indicate that it occurred prior to the repeal of section 39-728, R. R. S. 1943, but by so doing do not mean to imply that the result would necessarily be different if such repeal had occurred before the accident date.

There is no significant dispute in the evidence. The roads in question were unpaved but graveled. The intersection was not protected by stop signs or other traffic controls. At the time of the collision it was daylight, clear, and dry. The plaintiff's vehicle, a pickup-type truck carrying a mobile veterinary clinic, was traveling in a westerly direction on the east-west road. The plaintiff was a passenger in his own vehicle which was being driven by an employee. The defendant's vehicle, a passenger car, driven by him, was northbound on the north-south road. Each was in its own proper lane of traffic. The intersection was, insofar as it pertains to these two drivers, a "blind intersection." The view of each as to the approach of the other was completely obstructed by an embankment and a shelterbelt of trees, consisting of plum brush and cedars at least 6 to 8 feet tall which could not be seen through. The obstruction extended along the south of the east-west road to about the fence line east of the intersection. The shelterbelt extended east from the intersection and neither driver could see the other at any time in their approach to the intersection.

The plaintiff testified that his vehicle was traveling 40 to 45 miles per hour as it entered the intersection. His driver had decelerated without application of the brakes as they approached the intersection and they had been traveling at about 45 miles per hour. Plaintiff saw the other vehicle an instant before the collision. At that time his truck was already in the intersection. He estimated the speed of the other vehicle when he saw it at 50 miles per hour and that this vehicle was perhaps 20 feet south of the intersection when the plain-

tiff's vehicle entered it. The defendant's vehicle struck that of the plaintiff in the "left door and the left side of the mobile clinic." The plaintiff had traveled the road in question before but not for about 2 years. He did not warn his driver to slow down because it was a blind intersection. His driver told the plaintiff after the collision that he did not remember seeing the other vehicle before the impact.

The plaintiff's driver testified they were traveling "Forty to forty-five" miles per hour. He had been over the road before but not for a couple of years. He described the shelterbelt along the fence line. He decelerated 150 feet from the intersection. He stated that the edge of the trees was about 5 to 10 feet from the intersection. He did not remember seeing the other vehicle. He admitted that he had told the defendant when they were in the hospital after the accident that he did not see the defendant's vehicle before the impact. He did not remember applying the brakes before the collision. He looked to the south when the vehicle was a a little past the shelterbelt. He saw nothing. He could see 1,000 feet south down the road.

The defendant testified that the north-south road on which he was traveling was a more traveled road than the east-west road; that the posted speed limits on the north-south road are 50 miles per hour. He described the shelterbelt and stated that the embankment on which it was located was about 4 feet high. One could not see through the trees. He was going about 45 miles per hour as he approached the intersection and he thought he slowed by deceleration as he approached. He saw the plaintiff's vehicle before the collision but realized at that time there was nothing he could do to avoid it. He did, however, apply his brakes. He estimated he saw the plaintiff's vehicle when his own was about 30 feet from the impact. He knew the intersection was a blind one. He did not know which vehicle entered the intersection first.

The sheriff of Boone County who investigated the accident testified. His only testimony of consequence was that the defendant's vehicle left 15 feet of skidmarks just before the impact. The skidmarks were south of the intersection about 20 feet.

Pictures of the intersection and the area at the southeast corner thereof were introduced into evidence, but it is not possible from them to draw any firm conclusions as to the exact distance in feet each may have been from the intersection when he could have first seen the other. It could be concluded, however, that the radius of vision was a little more than indicated by the testimony of the plaintiff's driver.

It is evident of course the plaintiff had what is usually referred to as the directional right-of-way. A jury could have found the plaintiff's vehicle entered the intersection slightly ahead of that of the defendant. A jury could also have found the plaintiff's driver looked to the south at about the time the plaintiff's vehicle entered the intersection, but saw nothing even though, under the facts here, the other car had then to be almost at the intersection.

It is equally evident both drivers approached a blind intersection at about the same time and at such a rate of speed that neither could take any effective action to avoid the accident when he first saw or could have seen the other.

The plaintiff argues that the question of his contributory negligence, if any, and its comparison with that of the defendant presented a question of fact for the jury to decide. He cites and relies upon the following propositions of law. If a driver fails to see an automobile not shown to be in a favored position, the presumption is that its driver will respect his right-of-way and the question of his contributory negligence in proceeding to cross the intersection is for the jury. Before a verdict can be directed against a motorist for failing to see an approaching automobile at an unprotected intersection, the

approaching automobile must be undisputedly in a favored position.

One of the cases cited by the plaintiff is Sanderson v. Westphalen, 178 Neb. 298, 133 N. W. 2d 16. In that case the plaintiff and defendant occupied the same relative positions they do in this case, that is, the plaintiff was traveling west and the defendant north. The significant difference, however, is that in the cited case each had a clear view of the approach of the other for about 700 feet. The plaintiff in that case, although failing to see the approach of the defendant's vehicle at the time he actually looked, could expect to be seen by a driver approaching from the south and therefore have his directional right-of-way respected. In this case neither could see the other until almost in the intersection. Sanderson v. Westphalen, *supra,* is not applicable here.

The underlying purpose of right-of-way rules is, of course, to prevent collisions and they must be applied, together with the other applicable rules relating to the exercise of due care, in such a way that if the rules are observed they will tend to have this result.

In the case of an intersection with a completely obstructed view, known to be such by the drivers, there are only two alternatives which can have the desired effect. Either the driver of the automobile not having the directional right-of-way must approach the intersection at such a speed that he can observe down the favored road and can stop if necessary before entering and crossing and the driver on the right be deemed to have an absolute right-of-way and have no duty whatever to keep a lookout to his left, assuming he is traveling within the prima facie lawful speed limit, or both drivers must approach the intersection at such speed that each may effectively exercise an option on how to proceed as may be indicated by circumstances when they reach a point where they can see. The latter we believe is the more acceptable principle.

The court has never held that the driver on the right,

on approaching an intersection at about the same time as the one on the left, has an absolute right to proceed regardless of the circumstances. The statutory right-of-way rule, if it is to be effective, must be accompanied by an observance by both parties of the rules applicable to the exercise of due care and in particular the duty to keep a lookout and make effective observations at a time when such observations can have an effect consonant with underlying purpose of the rules.

In Barajas v. Parker, 165 Neb. 444, 85 N. W. 2d 894, where the plaintiff had the directional right-of-way at an intersection where the view was obstructed to her left and the other car was approaching from that direction, this court said: "In this case the testimony of plaintiff discloses that the plaintiff did not look in the direction from which the defendant was approaching. This, in the light of the facts and law, amounted to contributory negligence more than slight. It was her duty to look for approaching automobiles and to see those within the radius that denoted the limit of danger. See, Evans v. Messick, supra; Miller v. Aitken, 160 Neb. 97, 69 N. W. 2d 290.

*"This radius was narrowly limited in the present instance but this could not be a basis for departure from the rule.* The ground area itself apparently did not prevent a view of the intersection from ¾ mile to the south and almost ¼ mile to the west. The view however from the south to the west and from the west to the south of the intersection was obstructed by a hedge or row of small trees of a height estimated by witnesses to be from 12 to 30 feet. Vision through the hedge was difficult. The hedge was about 25 feet south of the east and west road. The east end was 42 feet west of the east edge of the north and south road. The radial area was not otherwise described." (Emphasis supplied.)

In Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596, a city street intersection case, this court held that the trial court erroneously directed a verdict against the

plaintiff who had the directional right-of-way. The plaintiff looked before entering the intersection and a jury could have concluded the defendant was not in the radius of danger. In that case this court said: "The general rule governing the type of case at bar is that when the injured party fails to look at all, or looks straight ahead without looking to either side, *or is in such a position that he cannot see,* or, in other words, when he takes no precaution at all for his own safety, it is usually a question for the court." (Emphasis supplied.)

A car approaching an intersection is not in a favored position and entitled to proceed regardless of the circumstances merely because he is on the right of the other car. His favored position and the right to proceed arising thereunder may be forfeited because of excessive speed under the circumstances. See Costanzo v. Trustin Manuf. Corp., 176 Neb. 136, 140, 125 N. W. 2d 556, cited by the plaintiff.

In this case the undisputed facts show the plaintiff approached a blind, unprotected intersection where he could not see to the left until almost at the intersection and where he had to realize that any car approaching on his left at whatever speed could not see him until it was almost in the intersection, and he did so at a speed which left him no alternative but to enter the intersection irrespective of whatever his observations might disclose when he reached a position where he could see to his left. Under these circumstances he was guilty of contributory negligence more than slight as a matter of law in that he took no precautions whatever for his safety. We hold that a driver approaching an unprotected intersection where he knows and can readily observe that his view is obstructed must do so at such a speed as will afford him a reasonable opportunity to make effective observations for cars approaching on the intersecting road and give him a reasonable opportunity to properly react to the situation he then observes or could observe, and where his view is completely ob-

structed and his speed is such that he has given himself no opportunity at all to observe and react appropriately he may, where the facts are undisputed, be found negligent as a matter of law. The trial court's determination was correct.

AFFIRMED.