DELORES R. PETERSON, APPELLANT, v. HAROLD E. DEPREZ, JR., APPELLEE.

242 N. W. 2d 641

Filed June 9, 1976. No. 40243.

Nelson, Harding, Marchetti, Leonard & Tate and Alan L. Plessman, for appellant.

Luebs, Tracy, Dowding, Beltzer & Leininger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an action to recover damages for personal injury and property damage arising from a collision of two motor vehicles at the intersection of two county roads in York County. The trial judge submitted to the jury issues of the defendant's negligence and the plaintiff's contributory negligence. The jury found for the defendant, judgment was entered on the verdict, and motion for new trial was overruled. The plaintiff appeals, assigning as error the refusal of the trial court to grant her motion for a directed verdict on the issue of liability.

The plaintiff's position is founded on the fact that she had the directional right-of-way and the claim that she was in an undisputedly favored position, and that the defendant failed to see her car and was therefore guilty of negligence as a matter of law. Even if her position is accepted arguendo, it completely overlooks the issue of her own possible contributory negligence. We conclude, after carefully examining the record, that that issue was appropriately submitted to the jury and that the trial judge did not err in denying her motion for a directed verdict on the issue of liability.

We briefly review the evidence. The intersection in question is not protected by any traffic signs or lights. Plaintiff was traveling north. Defendant was traveling east. Both roads were unpaved. At the time of the accident it was daylight, cloudy, and the roads were dry. A farm field to the west and south of the intersection was somewhat elevated above the roads and on the date of the collision, June 16, 1972, about 25 east-west rows

of milo were growing at the north end of the field. South of the milo were rows of corn which were about "knee high." In addition, there were plum thickets located on the south side of the east-west road and on the west side of the north-south road. These thickets terminated about 109 feet and 143 feet, respectively, from the southwest corner of the intersection. The extent to which these various obstructions of view affected the ability of the two parties to observe the approach of the other is vague in the extreme, but suffice it to say that the evidence would permit the jury to find that the views of both were obstructed until within a few feet of the intersection. In any event, neither party saw the other until it was too late to avoid the collision. The pickup of the defendant struck the car of the plaintiff near the left front door. The plaintiff attempted to avoid the collision by turning right. The defendant attempted to avoid the collision by turning left.

The defendant testified that he looked to his right when about a half-mile from the intersection and observed no vehicle approaching. He also looked to the north and saw a car (later determined to be driven by a Mrs. Cash) coming south on the north-south road. As he got closer to the intersection the Cash car stopped at the intersection with its directional turn light blinking for a left turn. When the defendant was about 10 to 25 feet from the intersection he saw the plaintiff's car. He hit his brakes but could not stop. He was traveling slowly, about 10 or 15 miles an hour, when he observed the plaintiff's automobile.

The plaintiff testified that she was familiar with the intersection and had passed through it almost daily for 7 or 8 years. She observed the approach of the Cash car and noted that the directional signal was blinking for a left turn. She had been proceeding at 15 to 25 miles per hour, but slowed down. She looked east and west but saw no cars on the intersection road. She testified that the plum thickets might have obstructed her

view. When the Cash car stopped at the intersection, the plaintiff was just a few feet from the south line of the intersection. She then looked west and saw no cars and then "speeded up" to about 15 miles per hour to proceed through the intersection. She was in the intersection when she saw the defendant's vehicle for the first time. She later said she saw the defendant a couple of seconds before the collision. The plaintiff's husband who was a passenger in her car testified that the defendant told him after the accident, "he never absolutely looked." Defendant denied this admission.

Mrs. Cash testified that she stopped about 10 feet from the intersection. She saw the plaintiff's car coming from the south about a city block away. She looked west and saw the defendant's vehicle about the same distance away. She could not estimate the speed of the two vehicles either absolutely or relatively. She realized there was going to be a collision when both cars were about "Ten feet from the intersection."

From the foregoing summary of the evidence the jury could properly conclude that the plaintiff was negligent in either failing to look at an opportune time, or, having looked, in failing to see the other vehicle which, at least in the last few feet in her approach to the intersection, must have been in plain sight. The court did not err in denying the plaintiff's motion for a directed verdict. There was at least a jury question on the issue of the plaintiff's contributory negligence.

In Hodgson v. Gladem, 187 Neb. 736, 193 N. W. 2d 779, which involved a factually similar situation, namely, an intersection not protected by traffic controls and with the view of both drivers obstructed, we affirmed the action of the District Court in directing a verdict against the plaintiff and said: "The court has never held that the driver on the right, on approaching an intersection at about the same time as the one on the left, has an absolute right to proceed regardless of the circumstances. The statutory right-of-way rule, if it is to be effective,

must be accompanied by an observance by both parties of the rules applicable to the exercise of due care and in particular the duty to keep a lookout and make effective observations at a time when such observations can have an effect consonant with underlying purpose of the rules." The only substantial difference between the evidence in that case and in this is that here both vehicles were traveling much more slowly and both probably could have stopped had timely observation been made.

AFFIRMED.