KENNETH SCHENK AND CORNHUSKER CASUALTY COMPANY, APPELLANTS, V. TOM YOSTEN, APPELLEE.

428 N.W.2d 510

Filed September 2, 1988.   No. 88-278.

Clarence E. Mock, of Johnson and Mock, for appellants.

Eugene L. Hillman, of McCormack, Cooney, Mooney, Hillman & Elder, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

Caporale, J.

Plaintiffs-appellants, Kenneth Schenk and Cornhusker Casualty Company, the workers' compensation carrier for Schenk's employer, seek damages arising from a collision between a truck operated by Schenk and an automobile driven by defendant-appellee, Tom Yosten. Yosten in turn counterclaimed for the damages he sustained. Each of the parties then moved for summary judgment. The district court sustained each motion, thereby dismissing both the action brought by Schenk and Cornhusker Casualty and the counterclaim brought by Yosten. Schenk and Cornhusker Casualty appeal, assigning as error the granting of summary judgment to Yosten. Yosten has not appealed. We affirm.

On the afternoon of August 27, 1985, Schenk and Yosten were driving along separate gravel roads in Cuming County about 1 mile east of Highway 9, north of West Point, Nebraska. Schenk was driving his employer's Chevrolet 1-ton truck westward at about 35 miles per hour in fourth gear. Yosten was driving his Datsun 280Z passenger car northward at 45 to 50 miles per hour. The speed limit in the area through which the vehicles were being operated was 50 miles per hour.

At about 2:30, both men approached the uncontrolled intersection of the two roads, which is located in a hilly area; the intersection itself lies on a hillside. Crops growing immediately to the south and east of the intersection obscured the views Schenk and Yosten had of each other. Schenk stated that a driver approaching the intersection from the east going west, as he was, had no view of northbound traffic on such driver's left until the driver entered the intersection. Yosten stated that a driver approaching the intersection from the south traveling north, as he was, might glimpse westbound traffic to such a driver's right from a point about 300 feet south of the intersection. Both men stated that they were quite familiar with the intersection, each having driven through it numerous times.

Both men also stated that at the time of the collision, it was sunny, clear, and dry. Nevertheless, neither man observed the other approach the intersection, nor did either observe any dust in the air which might have warned of the approach of another vehicle.

Both stated that they slowed as they entered the intersection. Schenk entered the intersection at about 30 miles per hour; Yosten was uncertain of his speed at that time. Neither man was able to estimate the other's speed.

Immediately after each first saw the other, the collision occurred, the front of Yosten's automobile striking the left side of the truck Schenk was driving just behind the driver's door, at a point slightly northwest of the center of the intersection.

According to Schenk, "every time [he] went through there . . . [he] most generally slowed down because [he] knew it was a dangerous corner." Yet, Yosten testified that as soon as he saw the oncoming truck, he knew a collision was imminent; in his words, "the speeds we were going there's no way we could have avoided it. I knew it was going to happen. No way you could stop that fast."

In *Hodgson v. Gladem*, 187 Neb. 736, 742-43, 193 N.W.2d 779, 783 (1972), this court stated the rule,

> A car approaching an intersection is not in a favored position and entitled to proceed regardless of the circumstances merely because he is on the right of the other car. . . .
>
> . . . [A] driver approaching an unprotected intersection where he knows and can readily observe that his view is obstructed must do so at such a speed as will afford him a reasonable opportunity to make effective observations for cars approaching on the intersecting road and give him a reasonable opportunity to properly react to the situation he then observes or could observe, and where his view is completely obstructed and his speed is such that he has given himself no opportunity at all to observe and react appropriately he may, where the facts are undisputed, be found negligent as a matter of law.

As in *Hodgson, supra,* in this case

> It is evident of course the plaintiff had what is usually referred to as the directional right-of-way. . . .
>
> It is equally evident both drivers approached a blind intersection at about the same time and at such a rate of speed that neither could take any effective action to avoid the accident when he first saw or could have seen the other.

*Id.* at 739, 193 N.W.2d at 781. See Neb. Rev. Stat. § 39-635(1) (Reissue 1984).

Appellants recognize that summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. *Hines v. Pollock, ante* p. 614, 428 N.W.2d 207 (1988); *J. J. Schaefer Livestock Hauling v. Gretna St. Bank, ante* p. 580, 428 N.W.2d 185 (1988); *Newman v. Hinky Dinky, ante* p. 382, 427 N.W.2d 50 (1988). Appellants argue, however, that this case is distinguishable from *Hodgson* on the law in that the vision of both *Hodgson* parties as they approached that intersection "was completely obstructed by an embankment and a shelterbelt of trees, consisting of plum brush and cedars at least 6 to 8 feet tall which could not be seen through," *Hodgson, supra* at 737, 193 N.W.2d at 780, while in this case "Yosten claimed he could see traffic traveling from east to west at least three hundred feet back from the intersection." Brief for appellants at 5. The gravamen of appellants' argument is that this intersection was not "blind" to Yosten and that therefore the *Hodgson* rule should not be applied.

The argument is unavailing. The rule in Nebraska after *Hodgson* and to this day is that one who is or should be aware that his or her own view of an uncontrolled intersection is obstructed is under a duty to approach that intersection with care reasonable in those circumstances regardless of the directional right-of-way, and quite regardless of the degree to which hindsight might indicate that another driver's view of the same intersection was or was not obstructed at the same time; further, the "care reasonable in those circumstances" is, as a matter of law, that degree of care which will permit the driver to make reasonably careful observation of the obstructed section of road and, if required, to take reasonable action to prevent a collision.

There is no dispute but that Schenk could not see northbound traffic as he approached the intersection, that he knew he could not, and that he nevertheless proceeded into the

intersection at 30 miles per hour. Under the *Hodgson* rule it was Schenk's duty, his directional right-of-way notwithstanding, as well as that of Yosten, to "approach the intersection at such speed that each may effectively exercise an option on how to proceed as may be indicated by circumstances when they reach a point where they can see." *Hodgson, supra* at 740, 193 N.W.2d at 782. Schenk's failure to do so amounts to negligence more than slight as a matter of law, and bars any recovery he might otherwise be entitled to arising out of Yosten's apparent similar breach of duty. *Hodgson, supra.* See, also, *Zeller v. County of Howard,* 227 Neb. 667, 419 N.W.2d 654 (1988); *Crink v. Northern Nat. Gas Co.,* 200 Neb. 460, 263 N.W.2d 857 (1978).

Appellants also recognize that in reviewing a summary judgment, this court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Hines v. Pollock, supra; J. J. Schaefer Livestock Hauling v. Gretna St. Bank, supra; Newman v. Hinky Dinky, supra.* Appellants thus argue that although there is no dispute of material fact, the ultimate inferences to be drawn from those facts make a summary judgment inappropriate. Specifically, appellants urge that "the comparative small size of Yosten's vehicle to Schenk's truck and the condition of the truck after impact gives rise to an inference of high speed on the part of Yosten." Brief for appellants at 6. Assuming for purposes of discussion that appellants' inference is correct, it is nonetheless clear that Yosten's speed in entering the fated intersection is irrelevant to Schenk's contributory negligence in entering the same intersection at a speed too fast to permit reasonably careful observation and, if required, reasonable action to prevent a collision.

The summary judgment dismissing the action brought by Schenk and Cornhusker Casualty against Yosten is correct and therefore is affirmed.

AFFIRMED.