DANIEL W. BIRCHEM, APPELLANT, V. RANDAL C. EGGERS, APPELLEE.

463 N.W.2d 824

Filed December 14, 1990.    No. 89-220.

William E. Gast, of Gast & Peters, and Dennis E. Koley for appellant.

Ray C. Simmons for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This is an action for damages which arose out of a collision between trucks operated by the plaintiff, Daniel W. Birchem, and the defendant, Randal C. Eggers, while driving on intersecting county roads in Cuming County, Nebraska.

The defendant's answer admitted that one of the proximate causes of the collision was his negligence in failing to keep a proper lookout, in failing to maintain his vehicle under reasonable control, and in driving at a speed which was excessive under the circumstances. The defendant further alleged that the plaintiff's negligence, which was more than slight in comparison to that of the defendant, was also a proximate cause of the collision.

Each of the parties moved for summary judgment. The motions were submitted upon the pleadings and the depositions of the parties. The district court sustained the defendant's motion and dismissed the plaintiff's petition. The plaintiff has appealed, assigning as error the granting of summary judgment to the defendant.

The record shows that at about 10:30 a.m. on October 13, 1986, the plaintiff was traveling south on county Road 9 at a speed of 40 to 50 miles per hour. At about the same time, the defendant was traveling west on county Road K at 45 to 50 miles per hour. The roads were dry, and the defendant said he could see clearly.

There was a "Road Closed" sign facing west located on the south side of Road K, 5 feet east of the intersection with Road 9. There was another "Road Closed" sign facing east located on the north side of Road K, 1 mile east of the intersection with Road 9.

Prior to the collision, the defendant was driving west on the 1-mile section of Road K that had been closed for work on a bridge. The defendant had driven on Road K to see if Lorrin Toelle was home. The defendant had worked part time for Toelle in the winters, and the defendant wanted to talk to him

regarding the upcoming winter and to pay a social call.

There was an unharvested cornfield at the northeast corner of the intersection of the county roads. The corn stood at full height and obscured the vision of each driver toward the direction from which the other was traveling.

In his deposition, the plaintiff did not recall whether he looked to the left or right upon approaching the intersection. He stated that at about 10 feet from the intersection he would have been able to see what was coming from the east; however, he did not see the defendant's truck before the collision occurred.

The defendant testified in his deposition that he was 10 to 15 feet from the intersection when he first saw the plaintiff's truck. He could see the side of the plaintiff's face, and the plaintiff was looking straight ahead.

Both men stated that they were familiar with the intersection. The plaintiff had driven through it at least once a day each way since Road K had been closed. He also stated that he was aware that two farm families lived on the section of Road K which had been closed.

Both drivers slowed their vehicles as they entered the intersection. The plaintiff entered the intersection at 20 to 25 miles per hour. The defendant was driving 35 to 40 miles per hour at the time of the collision. The defendant testified that he did not apply his brakes at the time of the collision, and the plaintiff does not recollect whether he applied his brakes.

In *Hodgson v. Gladem*, 187 Neb. 736, 742-43, 193 N.W.2d 779, 783 (1972), this court stated the following rule:

> A car approaching an intersection is not in a favored position and entitled to proceed regardless of the circumstances merely because he is on the right of the other car. His favored position and the right to proceed arising thereunder may be forfeited because of excessive speed under the circumstances. . . .

> In this case the undisputed facts show the plaintiff approached a blind, unprotected intersection where he could not see to the left until almost at the intersection and where he had to realize that any car approaching on his left *at whatever speed* could not see him until it was almost in

> the intersection, and he did so at a speed which left him no alternative but to enter the intersection irrespective of whatever his observations might disclose when he reached a position where he could see to his left. Under these circumstances he was guilty of contributory negligence more than slight as a matter of law in that he took no precautions whatever for his safety. We hold that a driver approaching an unprotected intersection where he knows and can readily observe that his view is obstructed must do so at such a speed as will afford him a reasonable opportunity to make effective observations for cars approaching on the intersecting road and give him a reasonable opportunity to properly react to the situation he then observes or could observe, and where his view is completely obstructed and his speed is such that he has given himself no opportunity at all to observe and react appropriately he may, where the facts are undisputed, be found negligent as a matter of law.

(Citation omitted.) (Emphasis supplied.) Accord, *Crink v. Northern Nat. Gas Co.*, 200 Neb. 460, 263 N.W.2d 857 (1978); *Schenk v. Yosten*, 229 Neb. 691, 428 N.W.2d 510 (1988).

Although the facts in this case are undisputed, the plaintiff contends that the *Hodgson* rule is not applicable because the intersection in this case was not an unprotected or uncontrolled intersection, since the road on which the defendant approached the intersection had been closed. Relying on Neb. Rev. Stat. § 39-609(5) (Reissue 1988), which provides that one driving on a closed road must do so with extreme care, the plaintiff argues that a motorist approaching an intersection on a closed road has the duty to slow for or, if necessary, yield the right-of-way to a motorist approaching the intersection on a road unburdened by any traffic control device. Moreover, the plaintiff asserts that a motorist approaching an intersection on an open road has the right to assume that any motorist approaching the intersection on a clearly posted closed road will slow for or, if necessary, yield the right-of-way to such motorist.

Section 39-609(5) applies to the operation of an automobile while it is on that part of the road which is closed, and requires extreme caution so as to avoid the additional hazards that may

be incident to the reason why the road has been closed.

In addition to § 39-609(5), the plaintiff relies on *Hall v. Kolb*, 374 S.W.2d 854 (Ky. 1964), and *Rester v. T. L. James Const. Co.*, 415 So. 2d 272 (La. App. 1982), in support of his argument. However, the Kentucky and Louisiana cases did not involve accidents at intersections which were blind intersections. In the *Hodgson* case and the Nebraska cases following it, the determinative fact is that the intersections involved were blind, not that they were unprotected.

In *Hodgson v. Gladem*, 187 Neb. 736, 740, 193 N.W.2d 779, 782 (1972), we stated:

> The underlying purpose of right-of-way rules is, of course, to prevent collisions and they must be applied, together with the other applicable rules relating to the exercise of due care, in such a way that if the rules are observed they will tend to have this result.
>
> In the case of an intersection with a completely obstructed view, known to be such by the drivers, there are only two alternatives which can have the desired effect. Either the driver of the automobile not having the directional right-of-way must approach the intersection at such a speed that he can observe down the favored road and can stop if necessary before entering and crossing and the driver on the right be deemed to have an absolute right-of-way and have no duty whatever to keep a lookout to his left, assuming he is traveling within the prima facie lawful speed limit, or *both drivers must approach the intersection at such speed that each may effectively exercise an option on how to proceed as may be indicated by circumstances when they reach a point where they can see.* The latter we believe is the more acceptable principle.

(Emphasis supplied.) The latter is the principle applicable to the facts in this case.

Regardless of what the duty is of a motorist approaching a blind intersection from a closed road, a motorist approaching a blind intersection from an open road has the duty to do so at a speed that will afford the motorist a reasonable opportunity to make effective observations for cars approaching on the intersecting road and give such motorist a reasonable

opportunity to properly react to the situation he or she then observes or could observe. Where the motorist's view is completely obstructed and his speed is such that he has given himself no opportunity at all to observe and react appropriately, the motorist is negligent as a matter of law where the facts are undisputed. *Hodgson v. Gladem, supra.*

In this case, although the defendant admitted that he was negligent in approaching the intersection, because the plaintiff approached the intersection at a speed which was too fast to permit him to make a reasonably careful observation and, if required, take reasonable action to avoid a collision, the plaintiff's negligence was more than slight as a matter of law and barred any recovery he might otherwise be entitled to arising out of the accident.

As we said in *Schenk v. Yosten*, 229 Neb. 691, 428 N.W.2d 510 (1988), it is the negligence of the plaintiff in approaching and entering the intersection at a speed too fast to permit reasonably careful observation and, if required, reasonable action to prevent a collision that bars the plaintiff's right to recovery as a matter of law.

The judgment dismissing the action is affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent.

This case, while very similar to *Hodgson v. Gladem*, 187 Neb. 736, 193 N.W.2d 779 (1972), presents controlling additional facts. Here, both parties were familiar with the intersection. Defendant was proceeding on a road closed to traffic. Plaintiff knew that the road on which defendant was traveling was marked "Road Closed," and, although plaintiff ordinarily used that road, he had not used it for at least a month before the accident. The majority opinion states: "The defendant had driven on Road K to see if Lorrin Toelle was home." The record shows that defendant may have chosen to use the closed road as an open road, and not merely for the purpose of calling on residents just west of the point where the road was marked closed. This may present a question of fact concerning Neb. Rev. Stat. § 39-609(5) (Reissue 1988), cited in plaintiff's brief. My search does not show what "Road Closed"

means, but if we reduce the question to consideration of the language itself, perhaps defendant should not have used the road at all, except for the statutorily stated purposes.

Defendant's deposition shows that he was returning to his home from Beemer. He went north from Beemer and turned west on graveled Road K. From the point he turned west, it was 2 miles to the accident site. One mile after his turn, defendant saw the first "Road Closed" sign as he proceeded west. He ignored it. Defendant knew that some "bridge work" was being done on the road, but "could see clearly the bridge was done." This bridge was about seven-eighths of a·mile east of the accident site. Defendant stated that the road was "passable" and that he treated it as a "main road." He traveled cautiously over the bridge at about 25 to 30 miles per hour, then sped up to "a normal type status," and then "slowed down" to a speed of 35 to 40 miles per hour as he entered the intersection. When he was 50 to 75 feet from the intersection, defendant could see the back of another "Road Closed" sign, controlling entrance to the road on which defendant was traveling. As defendant approached the intersection, cornfields at both the northeast and southeast corners of the intersection blocked his view both to the north and to the south. The intersection was a "blind" intersection for defendant.

The evidence also shows that plaintiff was going south and entered the intersection at 20 to 25 miles per hour. No corn was planted at the northwest corner of the intersection, and the view of the intersecting road to the west was not blocked. The cornfield at the northeast corner blocked plaintiff's view to the east, as it blocked defendant's view to the north, but plaintiff knew the road to the east was "closed." The intersection might be considered as a "partially blind" intersection for plaintiff. The front of defendant's vehicle struck the door on the driver's side of plaintiff's vehicle.

On these facts, the trial court found: "Plaintiff's negligence in failing to slow and look to the east before entering the intersection is more than slight and bars his recovery as a matter of law." The majority opinion holds to the same effect.

The dispositive question is whether plaintiff's negligence was more than slight *as compared to defendant's negligence*. Neb.

Rev. Stat. § 25-21,185 (Reissue 1989).

Our interpretation of this statute is established. We have said:

> In Roby v. Auker, 151 Neb. 421, 37 N.W.2d 799 (1949), this court interpreted section 25-1151, R.R.S. 1943 [now § 25-21,185 (Reissue 1989]), as follows: "The statute by the use of the words 'when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison' clearly intended the words 'in comparison' as qualifying both of the clauses immediately preceding. The words 'slight' and 'gross' as used in the statute are comparative terms and the intent of the statute is that the negligence of the parties shall be compared one with the other in determining questions of slight and gross negligence." See, also, Andelt v. County of Seward, 157 Neb. 527, 60 N.W.2d 604 (1953).

*C. C. Natvig's Sons, Inc. v. Summers*, 198 Neb. 741, 747, 255 N.W.2d 272, 276 (1977).

When such a comparison is made, it is clear to me that there are fact questions as to the degree of each party's negligence: Plaintiff entered an intersection at 20 to 25 miles per hour when he could see the intersecting road to his right and knew the intersecting road to his left was "closed." Defendant entered the same intersection from a road that he and the other driver knew was marked "closed" at a speed of 35 to 40 miles per hour when he could see neither to his right nor to his left.

We have said:

> "It should be noted here that the final provision of the comparative negligence statute requires that 'all questions of negligence and contributory negligence shall be for the jury.' While that language obviously does not affect the court's right to decide a case as a matter of law, it does emphasize the fact that the determination of questions of negligence and contributory negligence *and the comparative measuring of them are basically factual issues which are generally for determination by the jury.*"

(Emphasis in original.) *C. C. Natvig's Sons, Inc. v. Summers, supra* at 747-48, 255 N.W.2d at 277.

Summary judgment is an extreme remedy and is difficult to

use in many tort cases. I do not believe it should be used in this case because fact questions are present. I would reverse the judgment and remand the cause for further proceedings.

WHITE and SHANAHAN, JJ., join in this dissent.