RICHARD L. STAUFFER, PERSONAL REPRESENTATIVE OF THE ESTATE OF THERESA R. STAUFFER, DECEASED, APPELLANT, V. SCHOOL DISTRICT OF TECUMSEH, IN THE COUNTY OF JOHNSON, IN THE STATE OF NEBRASKA, APPELLEE.

473 N.W.2d 392

Filed July 12, 1991.   No. 88-1011.

T.J. Hallinan, of Cobb, Hallinan & Ehrlich, P.C., for appellant.

Donald R. Witt and Michael A. England, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.
This is an appeal in a wrongful death action brought under

the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987).

The plaintiff and appellant herein, Richard L. Stauffer, the personal representative of the estate of Theresa R. Stauffer, deceased, brought this action against the School District of Tecumseh to recover for Theresa Stauffer's death in an intersectional collision with the school district's schoolbus. The collision occurred on September 25, 1986, at the intersection of two county roads about 1 mile north and 6 miles west of Tecumseh, Nebraska. The accident involved a pickup truck driven by Theresa Stauffer (hereinafter plaintiff's decedent) from the north into the intersection in a southerly direction, and a schoolbus driven into the intersection by the defendant's driver, Gary R. Peters, who was proceeding from the east to the west.

The schoolbus was a typical schoolbus painted yellow, 9 feet 6 inches tall and 22 feet 4 inches long.

In his petition, the plaintiff alleged that the defendant's schoolbus driver was negligent (1) in failing to maintain a proper lookout, (2) in failing to maintain reasonable control of the schoolbus, (3) in failing to yield the right-of-way, and (4) in driving at an excessive speed for the conditions, and that his negligence was the proximate cause of the wrongful death of the plaintiff's decedent. In its answer, the defendant admitted the accident occurred but alleged that the plaintiff's decedent was guilty of contributory negligence sufficient to bar any recovery because she (1) failed to maintain a proper lookout, (2) failed to yield the right-of-way to the defendant's schoolbus, (3) operated the pickup at a rate of speed greater than was reasonable and prudent under the conditions, and (4) failed to have her pickup under reasonable control.

At the conclusion of all the evidence the plaintiff moved for a directed verdict against the defendant, arguing that the defendant was negligent as a matter of law. Similarly, the defendant moved that the plaintiff's petition be dismissed because the evidence showed as a matter of law the plaintiff's decedent was contributorily negligent in a degree sufficient to bar any recovery. The trial court reserved ruling on these motions and eventually decided the case on its merits.

The trial court found that the defendant's schoolbus driver, Peters, was negligent in his failure to keep a proper lookout, failure to yield right-of-way, and excessive speed for the conditions, and that such negligence was one of the proximate causes of the accident. The court further found that plaintiff's decedent was contributorily negligent because of her failure to maintain a proper lookout and because she operated her pickup at an unreasonable rate of speed under the traffic conditions. The court concluded by holding that decedent's contributory negligence, when compared with the negligence of the defendant's driver, was more than slight and that the negligence of the defendant's driver, when compared with that of the decedent, was less than gross, and awarded judgment to the defendant.

Following the trial court's decision, the plaintiff filed motions for new trial and for judgment notwithstanding the verdict. Both motions were overruled. The plaintiff has appealed from the judgment for the defendant and from the denial of his motions.

The plaintiff's assignments of error may be consolidated into one. The plaintiff contends the trial court erred in finding that the plaintiff's decedent was guilty of contributory negligence sufficient to bar any recovery. This is essentially a finding of fact. The findings of the trial court in an action under the Political Subdivisions Tort Claims Act have the effect of jury findings and will not be disturbed on appeal unless clearly wrong. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989); *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988). Under this standard, we review the record and consider the evidence in the light most favorable to the defendant in order to determine whether the trial court was clearly wrong in its findings.

In this case there is no presumption that the plaintiff's decedent was exercising due care. Such a presumption obtains only when there is no substantial evidence as to care or want of care on the part of the deceased. When there is such evidence, the presumption has no place in the case. *Bush v. James*, 152 Neb. 189, 40 N.W.2d 667 (1950).

The presumption of due care arising out of the natural instinct of self-preservation is not evidence but a mere rule of law and obtains only in the absence of direct or circumstantial evidence one way or the other on the subject. When such evidence is produced, the presumption disappears and may no longer be considered. Anderson v. Nincehelser, 153 Neb. 329, 44 N.W.2d 518.

*Omaha Nat. Bank v. Omaha P. P. Dist.*, 186 Neb. 6, 10-11, 180 N.W.2d 229, 232 (1970).

The record shows that the accident took place on September 25, 1986, about 1 mile north and 6 miles west of Tecumseh, at the intersection of two open and uncontrolled gravel roads. The collision occurred at about 7:15 a.m. on a clear, dry day. The plaintiff's decedent's vehicle, a 1983 Chevrolet S-10 pickup, was traveling in a southerly direction on a north-south minimum-maintenance road. The defendant's vehicle, a 1968 Chevrolet 36-passenger schoolbus, which was being driven by Peters, was westbound on an east-west gravel road with its headlights lighted. Both parties were familiar with the intersection.

The defendant's schoolbus driver, Peters, testified that on the east-west road about a quarter of a mile east of the intersection there is a small, gradual incline leading up to the intersection. Peters testified that he had accelerated slowly as he approached the intersection because of this hill and that his bus was traveling about 40 miles per hour as it entered the intersection. Peters saw the decedent's vehicle a "[s]plit second" before the collision. At that time his bus was at the fence line east of the intersection. He testified that the decedent's vehicle was near the fence line north of the intersection when he first saw it. The vehicles collided near the center of the intersection. The front of the defendant's schoolbus struck the pickup at the driver's door or shortly behind it.

Photographs taken by Keith Rodaway, a Nebraska state patrolman, on the day of the accident and received in evidence, show scattered trees and bushes to the north and east of the intersection. The patrolman testified that there were two possible locations where the bus would be "completely hidden" as it approached the intersection, and on his official report

stated that the "major reason for not seeing danger was trees for both vehicles."

The photographs themselves indicate, however, that it is very doubtful the trees and bushes were sufficient to obscure the bus as it approached the intersection. In fact, although the plaintiff testified that there were "some good sized trees and brush," he had stated in a deposition, "I think I did look to the left to see whether or not, you know, you'd be able to see a big yellow school bus coming and, in my opinion, there was no way of missing it."

After impact, the pickup spun a full 180° in a counterclockwise direction, with its rear end rotating toward the west. The pickup spun and ended up facing north in the right-hand ditch, southwest of the intersection. The force generated from the collision caused the schoolbus to also spin 180° counterclockwise. When the wheels on the right side of the bus struck a ridge of dirt along the south side of the east-west road, a bolt in the steering mechanism of the right front wheel snapped and the bus fell over on its side. The bus came to rest lying on its right side, facing east just west of the intersection.

Trooper Rodaway, who investigated the accident, testified that there were no skid marks or evidence of evasive action to indicate that either driver had made an attempt to stop or swerve. The patrolman testified that when he arrived, some 2 hours after the accident occurred, he found the decedent's vehicle in third gear. The plaintiff argues that this evidence suggests that the decedent attempted to slow down.

Peters testified that he went to the decedent's vehicle immediately after the collision and found that the gearshift lever was "down" and that the vehicle was in "road gear." The gearshift lever may have been moved later into third gear position to facilitate the removal of the decedent's body from the passenger's side of the vehicle.

Peters testified that when he first observed the decedent's vehicle, it was just north of the east-west fence line north of the intersection. He further testified that at that time, his bus was about even with the north-south fence line east of the intersection. Peters then testified that he had measured the distance from a cornerpost where the two fence lines intersect to

the road edges and that the distance from the cornerpost to the east edge of the north-south road was 23 feet 8 inches and the distance from the cornerpost to the north edge of the east-west road was 26 feet. This evidence suggests that the plaintiff's decedent was traveling at a rate of speed approximately the same as that of the defendant's driver just before the impact.

Although the plaintiff's decedent approached the intersection from the right,

> [a] car approaching an intersection is not in a favored position and entitled to proceed regardless of the circumstances merely because [it] is on the right of the other car. . . .
>
> . . . [A] driver approaching an unprotected intersection where he knows and can readily observe that his view is obstructed must do so at such a speed as will afford him a reasonable opportunity to make effective observations for cars approaching on the intersecting road and give him a reasonable opportunity to properly react to the situation he then observes or could observe, and where his view is completely obstructed and his speed is such that he has given himself no opportunity at all to observe and react appropriately he may, where the facts are undisputed, be found negligent as a matter of law.

*Hodgson v. Gladem*, 187 Neb. 736, 742-43, 193 N.W.2d 779, 783 (1972). Accord, *Crink v. Northern Nat. Gas Co.*, 200 Neb. 460, 263 N.W.2d 857 (1978); *Schenk v. Yosten*, 229 Neb. 691, 428 N.W.2d 510 (1988).

The right-of-way granted by the statute is relative and the duty of avoiding collisions at uncontrolled intersections rests upon both drivers.

Although the plaintiff's decedent's view to the left was partially obstructed as she approached the intersection, she nevertheless proceeded into the intersection at a speed which the trial court could find was unreasonable. Under the holding in *Hodgson, supra*, it was the decedent's duty, her directional right-of-way notwithstanding, as well as that of the defendant's busdriver, to "approach the intersection at such speed that each may effectively exercise an option on how to proceed as may be indicated by circumstances when they reach a point where they

can see." *Hodgson, supra* at 740, 193 N.W.2d at 782. The plaintiff's decedent's failure to do so amounted to contributory negligence in a degree sufficient to bar recovery. See *Hodgson, supra*. See, also, *Schenk v. Yosten, supra*; *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988).

*Pearson v. Richard*, 201 Neb. 621, 271 N.W.2d 326 (1978), involved a factual situation very similar to that in this case. The *Pearson* case arose out of a collision at an uncontrolled intersection of county roads. An automobile driven by the plaintiff's decedent approached the intersection from the north. A milk truck driven by the defendant approached the intersection from the east. The trial court submitted the issues of the plaintiff's decedent's contributory negligence in failing to keep a proper lookout and maintain reasonable control of her vehicle to the jury, which returned a verdict for the defendant. On appeal the judgment was affirmed.

In the *Pearson* case the point of impact was near the center of the intersection. After the impact the vehicles veered to the southwest into a field on the southwest corner of the intersection. At the time of the accident the milk truck was traveling at 40 to 45 miles per hour. No skid marks from either vehicle were found.

In the *Pearson* case we said at 627, 271 N.W.2d at 329-30:

[I]n determining the question of whether the evidence is sufficient to submit the issues of negligence and contributory negligence to the jury, a party is entitled to have all conflicts in the evidence resolved in his favor and the benefit of every reasonable inference that may be deduced from the evidence, and if reasonable minds might draw different conclusions from a set of facts thus resolved in favor of a party, the issues of negligence and contributory negligence are for a jury. Costanzo v. Trustin Manuf. Corp., 176 Neb. 136, 125 N.W.2d 556 (1963); Flanagin v. DePriest, 182 Neb. 776, 157 N.W.2d 389 (1968). Negligence is a question of fact and may be proven by circumstantial evidence and physical facts. . . . Where there is a reasonable dispute as to what the physical facts show, the conclusions to be drawn therefrom are for the jury. The credibility of witnesses and the weight to be given their testimony are solely for the consideration of the jury.

Price v. King, 161 Neb. 123, 72 N.W.2d 603 (1955).

In the *Pearson* case we further stated at 629, 271 N.W.2d at 330:

> While it is questionable whether, in the instant case, the circumstantial evidence and physical facts were sufficient to warrant a finding by the court as a matter of law that the decedent was guilty of contributory negligence more than slight, we need not reach that issue for the reason that we conclude that in any event the evidence was sufficient to warrant the submission of the issue of decedent's contributory negligence to the jury, which was done, and the jury has decided the issue by its verdict. The law is well established in this state that when a motorist enters an intersection of two highways he is *obligated* to look for approaching motor vehicles and to see those within that radius which denotes the limit of danger. If he fails to see a car which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law. If he fails to see an automobile not shown to be in a favored position the presumption is that its driver will respect his right-of-way and the question of his contributory negligence in proceeding to cross the intersection is a *jury* question.

The plaintiff contends that the trial court erroneously admitted the testimony of the defendant's driver concerning the position of the decedent's vehicle. Peters testified that he saw the decedent's vehicle a "[s]plit second" before the collision and testified as to the respective positions of the vehicles relative to the fence lines running east-west and north-south at the intersection. This testimony was rationally based upon his perceptions and, as such, was admissible. See Neb. Rev. Stat. § 27-701 (Reissue 1989). The defendant's driver testified that he had firsthand knowledge of the positions of the decedent's vehicle and his bus a "[s]plit second" before impact. Furthermore, he personally revisited the accident site, observed that conditions appeared the same as they had on the date of the accident, and then personally took measurements from the cornerpost to the respective road edges. The trial court did not abuse its discretion by admitting evidence which was rationally based upon the perceptions of the defendant's driver.

In any event, this was a trial to the court, and it is presumed that the trial court, in reaching its decision, disregarded any evidence which was inadmissible. See, *Suess v. Lee Sapp Leasing*, 229 Neb. 755, 428 N.W.2d 899 (1988); *Jeffres v. Countryside Homes*, 220 Neb. 26, 367 N.W.2d 728 (1985); *Abel v. Southwest Cas. Ins. Co.*, 182 Neb. 605, 156 N.W.2d 166 (1968).

The plaintiff also contends that apart from Peters' testimony, there was no evidence to establish that the decedent was driving at an unreasonable rate of speed. The circumstantial evidence concerning the positions of and the damage to the vehicles following the collision was some evidence as to the speed of the pickup when the vehicles collided. The positions of the vehicles at the time of impact is shown by the marks made by two "tow hooks" located on the bus' front bumper when they creased the pickup's left side door. The tow hooks, which were bent to the left, or south, by the force of the collision, are some indication of the pulling effect the motion of the pickup had upon the bus. It was a matter for the trier of fact to draw the inferences and conclusions from the evidence. Based on the foregoing evidence, when considered in the light most favorable to the defendant, the trial court could find that the plaintiff's decedent was traveling at an unreasonable rate of speed under the conditions and that the plaintiff's decedent was guilty of contributory negligence sufficient to bar any recovery.

The judgment of the trial court is affirmed.

AFFIRMED.

SHANAHAN, J., dissenting.

Saying that the fatal intersection was "partially obstructed" does not make it so, especially since the quoted characterization is only the majority's conclusion and not a reflection of evidence in the Stauffer case. A verbal characterization of the intersection cannot displace visual truth. Consequently, attempted description is no substitute for actual depiction. While the majority offers that "it is very doubtful the trees and bushes were sufficient to obscure the bus as it approached the intersection," photographic evidence removes all semblance of doubt whatsoever. Since "[o]ne picture is worth more than a thousand words," here is at least a thousand words:

The preceding photograph shows Theresa Stauffer's view to her left, looking southeast, as she drove her pickup south toward the intersection. At the extreme left of the photograph, a tree at the east-west fence line marks the bottom of a hill several hundred feet east of the intersection which Theresa Stauffer was approaching in her pickup. At that time, Peters was driving the bright-yellow 36-passenger schoolbus, which was 22 feet 4 inches long and 9 feet 6 inches high, down the westward-sloping hill at 30 to 35 miles per hour. One can readily discern that a schoolbus is not only painted yellow to be easily seen, but is designed so that the busdriver has a panoramic view for safe operation of the vehicle. In the driver's seat of the bus and while looking from right to left and vice versa, Peters had an elevated vantage point 8 feet above the ground as the westbound bus began accelerating to 40 miles per hour on the road behind the volunteer and intermittent scrub depicted in the photograph. The light-blue Stauffer pickup was 17 feet long and had a "camper" located in the pickup's bed just behind the cab, which was approximately $5^{1}/_{2}$ feet from its top to ground level. Accompanying Theresa Stauffer in the family pickup was the Stauffers' 7-month-old son, Adam, and both were secured with seatbelts. Adam survived the collision.

As shown in the photograph, no tree is large enough or dense enough to completely conceal the bus. Thus, nothing obstructed Theresa Stauffer's total view of the big yellow bus as it traveled the distances between or behind the trees or shrubs. To paraphrase a well-known expression, while a tree might have concealed some of the bus some of the time, no tree concealed all the bus at any time. Also, Peters, recounting his panoramic view of the intersection, never mentioned that any obstruction was a factor for him regarding the collision. Rather, as Peters described the collision to Trooper Rodaway, Peters "[d]idn't see [Stauffers'] pickup till [the] crash, and didn't have time to brake." Peters testified that he failed to see the Stauffer vehicle until the very "[s]plit second" before the bus struck the Stauffer vehicle at the juncture of the pickup's cab and bed.

Both Theresa Stauffer and Peters were acquainted with the intersection. The only direct evidence of vehicular velocity pertains to the schoolbus, namely, 40 miles per hour at impact.

Neither the Stauffer pickup nor the schoolbus left marks on the road surface to indicate braking or evasive action.

In that factual setting, the district court concluded that Theresa Stauffer "was contributorily negligent, sufficient to bar recovery because of her failure to maintain a proper lookout and because she operated her automobile at an unreasonable rate of speed under the traffic conditions then existing," negligence which "when compared with that of [defendant school district] was more than slight and the negligence of the defendant, when compared with that of the decedent, was less than gross." The exact nature of the deficiency in Theresa Stauffer's "lookout" is undisclosed. However, in a further factfinding step, the majority concludes that Theresa Stauffer's view "to the left was partially obstructed as she approached the intersection . . . at a speed which the trial court could find was unreasonable"; hence, according to the majority, a partially obstructed view of the intersection rendered the pickup's velocity, whatever that velocity may have been, "unreasonable."

"Negligence is never presumed, and cannot be inferred from the mere fact that an accident happened." *Bixby v. Ayers*, 139 Neb. 652, 662, 298 N.W. 533, 539 (1941). Accord *Howell v. Robinson Iron & Metal Co.*, 173 Neb. 445, 113 N.W.2d 584 (1962). Also, contributory negligence is an affirmative defense, and the defendant has the burden to prove contributory negligence. See, *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990); *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987).

The preceding expressions of Nebraska law bring us to a rule which this court has frequently expressed over several years: A decedent is presumed to have exercised reasonable care for the decedent's own safety, a rule which is based on the instinct of self-preservation and the natural inclination to avoid personal harm. See, *Pearson v. Richard*, 201 Neb. 621, 271 N.W.2d 326 (1978); *Sheets v. Davenport*, 181 Neb. 621, 150 N.W.2d 224 (1967); *Wolstenholm v. Kaliff*, 176 Neb. 358, 126 N.W.2d 178 (1964). The foregoing "presumption" is, perhaps, nothing more than a combination of procedural rules pertaining to production of evidence: To recover in a negligence action, a

plaintiff must prove the defendant's negligence, but a recovery may be barred by the plaintiff's contributory negligence proved by the defendant. In the Stauffer case, however, the evidence clearly establishes negligence on the part of Peters, the school district's driver, but fails to establish any negligence of Theresa Stauffer.

As an additional rule, one of the "Nebraska Rules of the Road," Neb. Rev. Stat. § 39-635(1) (Reissue 1988), provides: "When two vehicles approach or enter an intersection from different roadways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right." In *Reese v. Mayer*, 198 Neb. 499, 502, 253 N.W.2d 317, 319 (1977), this court construed § 39-635(1) and stated:

> When two vehicles approach an intersection at approximately the same time, the vehicle on the right has the right to proceed in a lawful manner in preference to the vehicle on the left. In other words, the vehicle on the right has the right to the immediate use of the intersection, and it is this use of the roadway that the vehicle on the left is required to yield to the vehicle on the right.

> It should be noted that the right-of-way which the vehicle on the left is required to yield to the vehicle on the right is a qualified right-of-way. The driver on the right must exercise due care, may not proceed in disregard of the surrounding circumstances, and where necessary to avoid a collision may be required to yield the right-of-way.

(Emphasis omitted.)

In *Wolstenholm v. Kaliff, supra* at 363-64, 126 N.W.2d at 182, an action for wrongful death caused by an intersection accident in which the decedent had the directional right-of-way, this court, affirming a plaintiff's verdict, stated:

> The evidence herein is undisputed. Janet A. Kaliff did not see the vehicle being driven by the deceased. No evidence was adduced which would impose any duty on the deceased to raise a question as to the right to proceed. The vehicle of the deceased did have the directional right-of-way, and, in the absence of evidence to the contrary, deceased was presumed to be exercising due

regard for her own safety and the safety of others. [Citations omitted.] Deceased also had the right to assume that the driver of any other vehicle approaching the intersection in an unfavored position would take the steps necessary to permit her to clear the intersection.

To sustain appellants' contention that the deceased was guilty of contributory negligence, we must assume contributory negligence merely because a collision occurred. This we cannot do. Negligence is never presumed, and it cannot be inferred from the mere fact that an accident happened. [Citation omitted.] Negligence must be proved by direct evidence, or by facts from which negligence can reasonably be inferred. In the absence of such proof, negligence will not be presumed.

Remarkably similar to the Stauffer case is the situation considered in *Price v. King*, 161 Neb. 123, 72 N.W.2d 603 (1955), which was also a wrongful death action on account of a fatal intersection accident in which the plaintiff's decedent, Nellie Price, in the operation of her automobile had the directional right-of-way over a truck owned by Orville Conn and driven by Harry King. Nellie Price was driving her car north on a gravel county road. At the same time, King was driving the truck eastbound at 35 miles per hour on a county road which eventually intersected the road on which Nellie Price was driving. King never slowed the truck's speed as he approached the intersection and did not apply the truck's brakes before impact. The truck struck Price's automobile on the east side of the intersection's north-south centerline. After the accident, physical facts were inconclusive. King gave contradictory versions concerning his observation, or lack of observation, with respect to the Price automobile before the collision. In an extrajudicial version expressed shortly after the collision, King admitted that "he did not see [Price] until he hit her." 161 Neb. at 125, 72 N.W.2d at 605. In another version, expressed at trial, King testified that he saw the Price auto approaching the intersection and assumed that he had time to pass safely through the intersection. King and Conn appealed from an adverse verdict. In affirming the plaintiff's verdict, this court rejected the King-Conn contention that contributory

negligence precluded recovery in Price's case and stated:

> The defendants contend primarily that the evidence shows Nellie Price was guilty of negligence more than slight as a matter of law when compared with the negligence of the defendants. The only negligence shown on the part of Nellie Price was that she was driving fast. There is no evidence that she was violating any speed limit fixed by statute. Whether she was negligent in failing to keep a proper lookout, or in failing to yield the right-of-way, is dependent upon the facts proved . . . . The presumption is that she used due care. There is a natural presumption that everyone will act with due care. The mere fact that an accident happens does not prove contributory negligence. Negligence must be proved by direct evidence or by facts from which such negligence can be reasonably inferred. In the absence of such proof, negligence cannot be presumed. . . . It cannot be said that Nellie Price was guilty of negligence which would as a matter of law preclude a recovery. From the record before us, she could well have assumed that her right-of-way was going to be respected by the driver of the truck.

161 Neb. at 128-29, 72 N.W.2d at 607.

Therefore, in any analysis of Theresa Stauffer's operation of the pickup, there is a "presumption" that she was operating her vehicle with due care. Consequently, the defendant school district had the burden to prove Theresa Stauffer's contributory negligence based on established facts. Applying the preceding to the Stauffer case, Peters, from his elevated vantage point inside the bus, glanced at the southbound approach to the intersection for which the Stauffer pickup had the directional right-of-way. Notwithstanding the majority's characterization that a southbound driver's view of the intersection was "partially obstructed," the photographic evidence emphatically and totally dispels the mistaken notion that the entire schoolbus was hidden at any time from Theresa Stauffer's view. Hence, there is no evidence which can legitimately serve as a basis for the conclusion that Theresa Stauffer was prevented from seeing the westbound schoolbus as it approached the intersection.

In the absence of evidence that Theresa Stauffer was prevented from seeing the bus, this court must operate on the premises that she exercised due care and saw the westbound bus, which was visible during its approach to the intersection. Theresa Stauffer then had every reason to believe that Peters saw her vehicle approaching the intersection and that Peters would yield the directional right-of-way. See, *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984) (driver had right to assume that a nonfavored driver would respect the directional right-of-way); *Price v. King, supra* (driver had a right to assume that a nonfavored driver would respect directional right-of-way). "[W]e are not prepared to say that the driver of a motor vehicle must slow down at every intersection in anticipation that the driver of the vehicle on the nonfavored street is about to commit a negligent act." *Steinauer v. Sarpy County, supra* at 840, 353 N.W.2d at 722.

Hence, the photographic evidence blows away the arboreal smokescreen. With elimination of the trees as an obstruction to Theresa Stauffer's view, as readily acknowledged in the majority's statement "it is very doubtful the trees and bushes were sufficient to obscure the bus as it approached the intersection," the bogus issue of lookout falls out. Undaunted at the evaporation of the lookout issue, the majority rushes to the pickup's "speed" as a basis to defeat Stauffer's recovery. However, there is no direct evidence concerning velocity of the Stauffer pickup. But "[w]hen there's a will there's a way." The majority settles on the bus' bent tow hooks and comes to rest at the postaccident position of the two vehicles. Given that the rapidly moving juggernaut of a bus drilled the southbound Stauffer pickup at a point behind the pickup's left front or driver's door, the bus' kinetic energy was transformed into a counterclockwise reactive movement by the Stauffer pickup as the fast-moving and much larger bus tended to come to rest after impact. Thus, the postimpact evidence is so utterly indecisive regarding vehicular velocity that the only reasonable conclusion is absolute inconclusiveness of the physical facts on the question of speed. At that point, without the boot of negligence by Theresa Stauffer, the majority pulls itself up by its bootstraps in a factually unsupported conclusion: Theresa

Stauffer was driving her pickup at an unreasonable rate of speed sufficient to bar recovery. Quite to the contrary, the evidence fails to support the majority's conclusion and the district court's findings.

Moreover, in pertinent part, Neb. Rev. Stat. § 25-21,185 (Reissue 1989) states:

In all actions brought to recover damages for injuries to a person . . . caused by the negligence . . . of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence . . . of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the [fact finder] in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff . . . .

Through a process of evaluation and reevaluation involving various calculations for operation of her vehicle, Theresa Stauffer decided that, at her pickup's present velocity, she could enter and pass safely through the intersection, that is, if Peters would honor the statutory directional right-of-way. Even if Theresa Stauffer, at the edge of the intersection, made a last-second decision against abandoning her right-of-way, or if, just before entry into the intersection, her failure to brake, accelerate, or veer might be characterized as negligence, such conduct would be, at the utmost, negligence not more than slight when compared with Peters' virtually reckless driving, which was grossly negligent in light of the comparative operation of the colliding vehicles. If there were any negligence on the part of Theresa Stauffer, her negligence is not considered in the abstract and evaluated by reference to a hypothetical, fictional, or mythical person, namely, the reasonably or ordinarily prudent person. Rather, Theresa Stauffer's negligence, if any, must be analyzed in concrete actuality: her negligence compared with Peters' negligence. After such comparison, the conclusion reached by the trial court and this court, "plaintiff's decedent was guilty of contributory negligence sufficient to bar any recovery," is unrealistic and unsustainable under the evidence and applicable Nebraska

precedential decisions.

Consequently, the Stauffer case does not turn on a question of fact, but, rather, on the question whether there is fact, a factual basis for the conclusion reached by the district court. Neither creating facts nor arriving at a conclusion without a factual foundation has a legitimate place in the process of factfinding appropriate in a trial, much less in an appellate review. Consequently, the district court was clearly erroneous in its conclusions that Theresa Stauffer failed to maintain a proper lookout and exceeded a reasonable rate of speed under the circumstances. If "comparative negligence" has any meaning in Nebraska, nothing in Theresa Stauffer's conduct precludes a recovery on account of the school district's unquestionably gross negligence. Since there was ample evidence on the wrongful death damages sustained by Theresa Stauffer's next of kin, the district court's judgment should have been reversed and this cause remanded for a determination of damages.

Not too long ago, in *Koncaba v. Scotts Bluff County*, 237 Neb. 37, 464 N.W.2d 764 (1991), this court set aside a plaintiff's recovery when there was evidence supporting the trial court's judgment under the Political Subdivisions Tort Claims Act. It seems only logical and fair that this court set aside a judgment for a political subdivision when there is no supportive evidence; hence, the district court's judgment should have been reversed in the Stauffer case.

WHITE, J., joins in this dissent.