DOROTHY J. ZELLER, APPELLANT, V. COUNTY OF HOWARD,
APPELLEE.
DOROTHY J. ZELLER, PERSONAL REPRESENTATIVE OF THE ESTATE
OF GEORGE ZELLER, DECEASED, APPELLANT, V. COUNTY OF
HOWARD, APPELLEE.

419 N.W.2d 654

Filed February 26, 1988.    No. 86-081.

L.W. Kelly, Jr., of Kelly & Kelly, for appellant.

William T. Wright of Jacobsen, Orr, Nelson & Wright, P.C., for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

SHANAHAN, J.

In consolidated cases, Dorothy J. Zeller appeals from judgments for Howard County in actions brought under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983). The alleged negligence involves an intersection of county roads and the absence of a stop sign for the road intersecting the arterial road.

In late morning of May 9, 1981, George and Dorothy Zeller were traveling in their northbound pickup on a Howard County graveled road to their daughter's home. Zellers were delivering fresh grass clippings in their pickup's uncovered box. Apparently, this was the first time Zellers had used this particular county road as a route to their daughter's house. Although the speed limit was 50 miles per hour, see Neb. Rev. Stat. § 39-666(1)(f) (Reissue 1984), George was driving the pickup at 15 miles per hour because he did not want the clippings to blow out of the pickup.

As the Zeller pickup headed north on the virtually level and straight road toward the eventual accident site, an intersection of gravel-surfaced county roads, the topography prompted Dorothy Zeller to remark about the distinguishable and upcoming intersection: "This looks like a bad corner." At that point, on Zellers' right, 100 feet south of the intersection, a slope ascended eastward to a knoll, which obstructed a northbound motorist's view to the right concerning the east-west crossroad leading to the intersection which lay ahead of Zellers. No stop sign was in place and erect to control northbound traffic into the intersection. The Zeller pickup did not stop before it entered the intersection. Simultaneously, but from the east, an automobile, driven at 45 miles per hour by

Don L. Lewandowski, was approaching the intersection. No evidence indicated that George Zeller applied the pickup's brakes, took evasive action, or saw the Lewandowski automobile before the collision. Lewandowski's car left 40 feet of preimpact skid marks. According to Dorothy Zeller, she "saw a sudden — like a puff of smoke, which was dust, and that was it. He had hit us. Mr. Lewandowski had hit us." The point of impact on Zellers' pickup was at the juncture of the pickup's cab and box. As a result of the collision, Dorothy Zeller received bodily injuries, and George Zeller sustained bodily injuries which caused his death shortly after the accident.

As personal representative of George Zeller's estate and in her individual capacity, Dorothy Zeller filed suits against Howard County and alleged that the county's negligence consisted of failure to inspect "traffic controls for said intersection for several weeks before May 9, 1981," and failure to replace and maintain the stop sign for northbound traffic entering the intersection, after the county had been "notified the stop sign was down."

Among the allegations in its answer filed in each of the Zeller cases, Howard County referred to a motorist's obstructed view to the east of the intersection and claimed that George Zeller's conduct in driving into the intersection, notwithstanding his obstructed view, was the proximate cause of the collision.

In *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 125, 403 N.W.2d 335, 338-39 (1987), this court stated:

> A district court's factual findings in a case brought under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly incorrect. [Citations omitted.]

> In a bench trial of a law action, the court, as the "trier of fact," is the sole judge of the credibility of witnesses and the weight to be given their testimony. Among the factors entering into the trial court's resolution of any conflicts of evidence are such items as the respective interests of the parties in the litigation; the demeanor of witnesses, including the parties, while testifying before the court; the apparent fairness exhibited by witnesses; the extent to which testimony of various witnesses is corroborated; and

the reasonableness or unreasonableness of testimony from the witnesses. [Citation omitted.] "In reviewing a judgment awarded in a bench trial, the Supreme Court does not reweigh evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence."
(Quoting from *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).)

At trial, the only evidence pertained to the absence of a stop sign which otherwise would have protected the arterial road from northbound traffic. Several witnesses testified about the stop sign in question. The accident site was characterized as a "blind intersection," with the northbound approach into the intersection likened to "coming out of a tunnel" on account of the slope or hill which obstructed a motorist's view to the right on the northbound road. As a motorist approached the intersection, the view of the east-west road on the motorist's right was "totally obstructed" until the motorist was 10 feet from the south edge of the intersecting east-west road. During those last 10 feet of the northbound road into the intersection, a motorist's view to the right was unobstructed for at least a quarter mile.

Approximately 2 months before the accident, Howard County received notice that the intersection's stop sign for northbound traffic had been knocked down, apparently by vandals. Investigation immediately after the accident disclosed that the stop sign was lying in a foot-deep depression adjacent to the northbound road. The base of the steel post for the stop sign was embedded in the ground 20 feet from the south edge of the east-west road, but was bent toward that road. The stop sign or shield, still attached to the bent post, was lying at ground level within two parallel wheel marks on the roadside surface.

At conclusion of the evidence, nothing demonstrated Howard County's negligence in initially placing the stop sign at its installation site or in constructing the intersection and its approaches. Howard County requested that the court state, in writing, its conclusions of fact. See Neb. Rev. Stat. § 25-1127

(Reissue 1985) (a court's written statement of factual conclusions in a bench trial). See, also, *Lindgren v. City of Gering*, 206 Neb. 360, 292 N.W.2d 921 (1980) (permissible request for court's written conclusions of fact in an action under the Political Subdivisions Tort Claims Act). As requested, the court filed its conclusions, namely, Howard County was not obligated to install, maintain, or replace a stop sign at the intersection in question; George Zeller was negligent to a degree more than slight; the obstructed view to the east of the intersection was obvious to George Zeller as he approached the intersection; and Howard County's conduct was not the proximate cause of the accident. The court entered judgment in favor of Howard County in each of the Zeller cases, incorporating the findings contained in the court's written statement of conclusions.

To prevail in an action based on negligence, a plaintiff must prove four essential elements: the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. See *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). In accordance with the foregoing rule and to prevail in the actions against Howard County, Dorothy Zeller must prove that the county had a duty to inspect, replace, and maintain its stop sign after installation and that the county breached its stop sign duty, which breach proximately caused the collision in the intersection and the damages claimed as the collision's result. Regarding Howard County's breached duty pertaining to a stop sign, Dorothy Zeller points to § 23-2410 of the Political Subdivisions Tort Claims Act, which statute, in part, provides for recovery by one who "suffers personal injury or loss of life . . . by means of insufficiency or want of repair of a highway or bridge or other public thoroughfare . . . ."

Although each of Dorothy Zeller's assignments of error relates to various aspects of negligence law applicable to the present case, a dispositive question is: Was Howard County's conduct the proximate cause of the collision in the intersection?

While it may be interesting to discuss whether Howard County breached its stop sign duty, as Dorothy Zeller has alleged, in all practicality such discussion is pointless if the county's breach of its duty did not proximately cause the

intersectional collision. Consequently, if we assume, but do not decide, that Howard County breached its duty to inspect, replace, and maintain the stop sign at the intersection, it becomes necessary to determine whether the county's conduct proximately caused the collision resulting in damages to the Zellers.

A defendant's conduct is the cause of an event if the event would not have occurred but for that conduct; conversely, a defendant's conduct is not the cause of an event if the event would have occurred without the defendant's conduct. *Prime Inc. v. Younglove Constr. Co., ante* p. 423, 418 N.W.2d 539 (1988); *Hughes v. Enterprise Irrigation Dist.*, 226 Neb. 230, 410 N.W.2d 494 (1987). See, also, Prosser and Keeton on the Law of Torts, *Proximate Cause* § 41 (5th ed. 1984).

" 'The proximate cause of an injury is that cause which, in natural and continuous sequence, unaccompanied by any efficient, intervening cause, [produces the injury,] and without which the result would not have occurred. . . .' " *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 722, 335 N.W.2d 758, 763 (1983) (quoting from *Starlin v. Burlington Northern, Inc.*, 193 Neb. 619, 228 N.W.2d 597 (1975)).

"There are three basic requirements in establishing proximate cause. The first requirement is that the negligence be such that 'without which the injury would not have occurred,' commonly known as the 'but for' rule. . . .

"The second requirement is that the injury be the natural and probable result of the negligence. . . .

. . . .

"The third requirement is that there be no efficient intervening cause."

*Greening v. School Dist. of Millard*, 223 Neb. 729, 735, 393 N.W.2d 51, 56 (1986) (quoting from *Daniels v. Andersen*, 195 Neb. 95, 237 N.W.2d 397 (1975)).

"Determination of causation is, ordinarily, a matter for the trier of fact." *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 778, 408 N.W.2d 280, 285 (1987). When there is conflicting evidence, determination of proximate cause is a question or matter for the trier of fact. *Corbet, Inc. v. County of Pawnee,*

219 Neb. 622, 365 N.W.2d 437 (1985).

*Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987), involved a motorcycle passenger's claim for injuries as the result of an intersectional collision between the motorcycle and an automobile. In *Delaware*, as the motorcyclist prepared to enter the intersection, his view of the intersection was hampered or somewhat obstructed by hedges adjacent to the intersection. When the motorcycle pulled into the intersection, the cycle was struck by an automobile traveling into the intersection. Delaware sued the automobile's driver and Vallses, the landowners on whose property the obstructive hedge was located. In sustaining a summary judgment for the landowners, we stated:

> We have defined an efficient intervening cause as a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original wrong and the injury. . . . It is the intervening negligence of a third person who has full control of the situation and whose negligence is such as defendant was not bound to anticipate and could not be said to have contemplated, which later negligence results directly in injury to plaintiff. *Corbet, Inc. v. County of Pawnee*, 219 Neb. 622, 365 N.W.2d 437 (1985). The doctrine that an intervening act cuts off a tort-feasor's liability comes into play only when the intervening cause is not foreseeable. *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

226 Neb. at 144, 409 N.W.2d at 624.

In negligence law, an efficient intervening cause is new and independent conduct of a third person, which itself is the proximate cause of the injury in question and breaks the causal connection between original conduct and the injury. See, *Delaware v. Valls, supra; Shelton v. Board of Regents*, 211 Neb. 820, 320 N.W.2d 748 (1982).

> " ' "The causal connection is broken if between the defendant's negligent act and the plaintiff's injury 'there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could

not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff.' " ' "
*Shelton v. Board of Regents, supra* at 825, 320 N.W.2d at 752 (quoting from *Coyle v. Stopak*, 165 Neb. 594, 86 N.W.2d 758 (1957)). See, also, *Shupe v. County of Antelope*, 157 Neb. 374, 59 N.W.2d 710 (1953).

The absent stop sign in the Zeller cases presents a situation analogous to two vehicles approaching or entering the same intersection "from different roadways at approximately the same time," see Neb. Rev. Stat. § 39-635(1) (Reissue 1984), requiring the vehicle on the left to yield a qualified right-of-way to the preferred or favored vehicle on the right. See, *Muirhead v. Gunst*, 204 Neb. 1, 281 N.W.2d 207 (1979); *Reese v. Mayer*, 198 Neb. 499, 253 N.W.2d 317 (1977).

In *Hodgson v. Gladem*, 187 Neb. 736, 742-43, 193 N.W.2d 779, 783 (1972), this court enunciated the general rule applicable to motorists approaching a "blind" and unprotected intersection, when a motorist's view of the intersection or its approaches is obstructed:

[A] driver approaching an unprotected intersection where he knows and can readily observe that his view is obstructed must do so at such a speed as will afford him a reasonable opportunity to make effective observations for cars approaching on the intersecting road and give him a reasonable opportunity to properly react to the situation he then observes or could observe, and where his view is completely obstructed and his speed is such that he has given himself no opportunity at all to observe and react appropriately he may, where the facts are undisputed, be found negligent as a matter of law.

See, also, *Crink v. Northern Nat. Gas Co.*, 200 Neb. 460, 263 N.W.2d 857 (1978).

Nevertheless, we dispose of the Zeller appeals by a hypothesis involving a stop sign placed at the site of the absent stop sign in question. If there were an erect stop sign located 20 feet from the south edge of the east-west road, and if George Zeller had stopped the pickup in obedience to that stop sign, there was still an obstructed view of westbound traffic approaching the intersection. That obstructed view persisted to

a point 10 feet north of our hypothetical stop sign, where a northbound motorist would then have an unobstructed view of traffic approaching the intersection from the east, which, in the cases before us, was the Lewandowski automobile traveling within the speed limit. Without application of the pickup's brakes or evasive action, and, inferentially, without looking and seeing Lewandowski's automobile, George Zeller drove the pickup into the intersection and into the path of the approaching and clearly observable Lewandowski automobile, virtually assuring inevitability of the collision.

Thus, if Howard County were negligent by breaching its duty concerning a stop sign for northbound traffic about to enter the intersection, George Zeller had complete control over the situation because he could have avoided the collision by exercising reasonable care while driving the pickup toward and into the intersection. Howard County, even if negligent regarding the absent stop sign in question, was not bound to anticipate, and could not have contemplated, that George Zeller would totally and unreasonably disregard the obvious danger inherent in vehicular travel into a visually obstructed intersection of public roads and fail to take appropriate measures to avoid the collision. Under the circumstances, George Zeller's conduct in driving the pickup was unforeseeable by the county and constituted an efficient intervening cause, namely, the proximate cause, of the intersectional collision. Therefore, in both of the cases against Howard County, Dorothy Zeller failed to prove that the county's conduct concerning the stop sign proximately caused the collision. We are unable to conclude that the district court's finding on proximate causation is clearly incorrect. Consequently, we affirm the judgments of the district court.

AFFIRMED.