JUDITH A. KUMAR, FORMERLY JUDITH A. ALLEN, APPELLEE AND CROSS-APPELLANT, V. DOUGLAS COUNTY, A POLITICAL SUBDIVISION, APPELLANT AND CROSS-APPELLEE.
JEFFERY T. ALLEN, APPELLEE AND CROSS-APPELLANT, V. DOUGLAS COUNTY, A POLITICAL SUBDIVISION, APPELLANT AND CROSS-APPELLEE.
JAMES H. ALLEN, APPELLEE AND CROSS-APPELLANT, V. DOUGLAS COUNTY, A POLITICAL SUBDIVISION, APPELLANT AND CROSS-APPELLEE.
452 N.W.2d 21

Filed February 23, 1990.   Nos. 88-269, 88-270, 88-271.

Ronald L. Staskiewicz, Douglas County Attorney, and Michael W. Amdor for appellant.

Vincent P. Sutera and George A. Sutera, of Sutera & Sutera, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This appeal arises from consolidated tort actions against Douglas County, Nebraska, under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987). In the early morning hours of June 1, 1984, 17-year-old Jeffery Allen was driving a vehicle southbound into a curve on Douglas County Road 98 as it intersects with County Road 29. The vehicle left the road and Jeffery was thrown from the car. The car rolled over four times. Jeffery suffered, among other injuries, a compound depressed skull fracture which penetrated the suboccipital area of the brain, leaving him permanently disabled. Jeffery brought an action against Douglas County on his own behalf for his injuries, and Judith A. Kumar, his natural mother, and James H. Allen, his natural father, brought actions to recover for their expenditures, losses, and damages.

The plaintiffs contended in their petitions that the defendant was negligent in (1) failing to properly warn Jeffery of the curve in the road in County Road 98 as it approached County Road 29; (2) failing to maintain the road for those people who are unfamiliar with the curve in County Road 98 as it approaches County Road 29; (3) failing to have a traffic control and warning sign properly up and visible to warn unfamiliar drivers

of the imminent danger on said road; (4) designing County Road 98 in such a manner as to be dangerous as it intersects with County Road 29; (5) maintaining the speed limit at 55 miles per hour on the day of the accident, which speed is unsafe and dangerous for the conditions of the road as it approaches the intersection with County Road 29; and (6) having knowledge of the "curve ahead" sign on County Road 98 being down and not correcting said situation.

The defendant denied the allegations, and further alleged that Jeffery was contributorily negligent in a degree more than slight such as to bar recovery and that the sole proximate cause of the accident was the negligence of Jeffery in (1) operating his vehicle at an excessive speed under the circumstances; (2) failing to maintain an adequate and proper lookout; (3) failing to keep his motor vehicle under control at all times; (4) failing to take prompt and adequate remedial action after he became aware of his entry into the curve at said intersection; and (5) operating a motor vehicle when his ability to do so was hampered, impaired, or diminished by the influence of alcoholic beverages consumed by him prior to the accident.

On October 30, 1987, the trial court, sitting without a jury, entered its findings of fact and ruled in favor of the defendant in each of the three cases. The court made the following pertinent factual findings:

There had been erected on Road 98 a traffic warning sign which indicated the presence of a curve in the roadway at the left, but on the night in question that sign was not in place....

3. The defendant is the political subdivision which was responsible for the maintenance and the repair of County Roads 98 and 29 on June 1, 1984.

4. The "design" speed of the curve herein is approximately 40 to 42 miles per hour. That is the speed in which the curve can be safely negotiated without any problem. The "critical" speed of the curve is 59 to 65 miles per hour. That would be the maximum speed in which a car could go around the curve safely.

5. ... The defendant was negligent in failing to have the curve sign in place prior to and at the time of this accident.

This negligence of the defendant was a proximately-contributing cause of this accident.

6. . . . "Signing" is more important to a driver than "striping" as regards warning of a curve. . . .

. . . .

8. . . . [The speed of Jeffery's automobile] was . . . faster than 55 miles per hour, and possibly in excess of 60 miles per hour. The speed limit of 55 miles per hour is the top speed for normal driving conditions. . . . Jeffrey [sic] was traveling faster than reasonable and proper under the conditions and circumstances then and there existing and was negligent in so doing. This negligence of Jeffrey [sic] was a proximately-contributing cause of this accident.

9. On County Road 98, on June 1, 1984, there were center-line markings (yellow or white or both) approaching the curve and into the curve. There was also a white line on both edges of Road 98 to show where the edge of the road was located. All of these lines would be visible by Jeffrey [sic] and within the beam of his headlights. These markings are not a substitute for signs but supplement the signs. They convey warnings or information to the driver without diverting his attention from the roadway. . . . Jeffrey [sic] was negligent in not maintaining a proper lookout for the obvious markings on the road. This negligence was a proximately-contributing cause of this accident.

10. On the night of June 1, 1984, Jeffrey [sic] had some beer to drink. Sometime after the accident, his blood alcohol content level was measured at .061. . . . As a result of the alcohol content in his blood, Jeffrey [sic] was driving the automobile at the time of this accident in an impaired condition, resulting in a slower than normal reaction time and affecting his attention span. Jeffrey [sic] was driving the automobile at the time of the accident while under the influence of alcohol to some extent. This was negligence, and this negligence was a proximately-contributing cause of this accident.

11. The negligence of Jeffrey [sic] T. Allen, when compared with that of the defendant, was more than slight

and therefore defeats his recovery. It therefore follows that the petitions of all three plaintiffs must be dismissed at the cost of each plaintiff.

The plaintiffs filed motions for new trials on November 3, 1987. The court took the motions under advisement after arguments were had on November 10, 1987.

It is at this point in the proceedings that the actions of the trial court become perplexing. On February 24, 1988, the court, in ruling on the motions for new trial, after having an opportunity to review the transcribed testimony, decided it had "come up with a couple of different conclusions on this matter . . . ." The court still concluded that there was negligence on the part of the defendant as set forth in the original orders, but stated the following new findings.

Based on the testimony of the expert witnesses for plaintiffs and defendant that if the curve sign had been up, Jeffery could have slowed down enough to safely negotiate the turn, the court concluded that Jeffery's speed under the circumstances was not a proximately contributing cause of the accident.

As to the matter of lookout, the court found that the white and yellow lines that mark the road supplement the sign, but in and of themselves are not sufficient to give warning of a curve. Therefore, if Jeffery did not keep a proper lookout for these lines, such was not a proximately contributing cause of the accident.

The court still concluded that Jeffery was driving his vehicle in an impaired condition and that this was negligence and was a proximately contributing cause of the accident, but stated that the impairment would be at a minimum or low level.

The court concluded by finding that Jeffery Allen was guilty of slight negligence when compared with the negligence of the defendant and that the negligence of the defendant as found in the prior order in comparison with Jeffery's negligence was gross.

Based on these new findings, the court then sustained the plaintiffs' motions for new trial.

On February 29, 1988, the plaintiffs each filed a "motion to require judgment on the findings." On March 24, the court determined that it had the authority to vacate the prior

judgments and enter judgments for plaintiffs. In sustaining plaintiffs' motions, the court found the granting of a new trial to be moot and entered judgment in favor of Jeffery Allen in the amount of $950,000, reduced to $807,500 by virtue of Jeffery's slight contributory negligence. The court entered judgments in favor of James Allen in the amount of $765 and in favor of Judith Kumar in the amount of $1,168.75. The defendant appeals from the awards, and the plaintiffs cross-appeal, claiming insufficient damages.

The defendant assigns 12 errors. The first nine errors go to the findings made by the trial court in its order of February 24, 1988, which therefore presents the question of whether there was sufficient evidence to support the court's findings. The final three assignments claim that the court erred in granting plaintiffs a new trial, in vacating the original judgments of October 30, 1987, and entering judgments for the plaintiffs, and in failing to account for Jeffery Allen's contributory negligence and to make a greater reduction of the judgment awarded him.

To determine the outcome of this appeal, we must first unravel the procedural tangle which began after plaintiffs filed their motions for new trial.

The standard of review of an order granting a new trial is whether the trial court abused its discretion. A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989); *Mundt v. Northwestern Bell Tel. Co.*, 230 Neb. 192, 430 N.W.2d 530 (1988); *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983).

The district court has the authority to grant a new trial based on any of the causes found in Neb. Rev. Stat. § 25-1142 (Reissue 1989) which materially affect the substantial rights of the aggrieved party. The trial court appears to have granted the plaintiffs' motions for new trial based on the conclusion that the decisions were not sustained by sufficient evidence or were

contrary to law. We disagree.

A district court's factual findings in a case brought under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly incorrect. *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989); *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988).

In a bench trial of a law action the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Ohnstad, supra.*

Determination of causation is, ordinarily, a matter for the trier of fact. *Zeller, supra.* When there is conflicting evidence, determination of proximate cause is a question or matter for the trier of fact. *Zeller, supra.*

Accordingly, under the foregoing principles of law, the court determined the facts and causation, and if there is evidence to support the trial court's original findings, then those findings and the court's original entries of judgments for the defendant cannot be clearly incorrect and an order granting a new trial based on insufficient evidence would be erroneous. Testimony from both the plaintiffs' and the defendant's expert witnesses regarding the existing warning, speed of the car, and cause of the accident, if believed, would have sufficiently supported specific findings and judgments for either plaintiffs or defendant. The original decisions of the trial court are neither contrary to law nor lacking sufficient evidence.

Therefore, there being no cause or basis under § 25-1142 to justify granting a new trial, the defendant has a right to keep the benefit of its judgments, and the trial court abused its discretion in granting plaintiffs' motions for new trial.

In considering plaintiffs' motions for new trial, the trial court reviewed the transcribed testimony which became available to the court after the original judgments for the defendant were entered. This review amounted to a new trial on the transcript where the judge reweighed the evidence and, changing his mind, recited new factual findings in granting plaintiffs' motions. This action was prejudicial to the party that secured the initial judgments.

We need not examine any other assignments of error to

resolve this case. The court's vacating of the original judgments and entry of judgments and awards for plaintiffs follow from erroneously granted motions for new trial, and our decision today renders examination of the defendant's first nine assignments of error unnecessary.

The judgments of the district court are therefore reversed, and the cause is remanded to the district court with directions to reinstate its original judgments of October 30, 1987, for the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.