J.D. KONCABA, PERSONAL REPRESENTATIVE OF THE ESTATE OF ADOLPH LEE KONCABA, DECEASED, APPELLEE, V. SCOTTS BLUFF COUNTY, NEBRASKA, A POLITICAL SUBDIVISION, AND STATE OF NEBRASKA, APPELLANTS.

464 N.W.2d 764

Filed January 18, 1991.    No. 88-692.

Gary D. Denton, of Hancock & Denton, P.C., for appellant County.

Robert M. Spire, Attorney General, John R. Thompson, Douglas J. Peterson, and Lisa D. Martin-Price for appellant State.

Robert P. Chaloupka, of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, P.C., for appellee.

R. Collin Mangrum for amicus curiae Pat Brochtrup, and J. Michael Fitzgerald, of Carpenter, Rowen & Fitzgerald, for amicus curiae Ronald Maresh.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This is a wrongful death action against the State of Nebraska under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1987), and Scotts Bluff County under the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987).

The plaintiff's decedent, Adolph Lee Koncaba, died as the result of injuries sustained in a one-car accident. The accident occurred on September 27, 1986, at approximately 9 p.m., when the plaintiff's decedent was driving his automobile in an easterly direction on "Old Highway 26," a two-lane highway, at a point approximately 3 miles east of Scottsbluff, Nebraska. At the time of the accident, approximately 2 miles of the highway were undergoing asphalt resurfacing. At the point of the accident, the shoulders of the highway had not yet been raised to the level of the new asphalt overlay. As a result, there was a 6- to 10-inch dropoff from the pavement to the shoulder of the highway. The shoulder of the road was approximately 10 feet wide and consisted of a smooth, flat surface.

The plaintiff alleged that the dropoff between the surface of the pavement and the shoulder, at the point where the accident occurred, created an unreasonably dangerous and hazardous road condition which proximately caused the death of plaintiff's decedent. Specifically, the petition alleged that the defendant State was negligent in (1) drafting a highway construction contract without adequate safety considerations, (2) supervising the highway construction project without providing adequate safety considerations, and (3) failing to warn motorists of an unreasonably dangerous road condition created by the highway construction project. As to the defendant county, the plaintiff alleged that it was negligent in (1) helping to create an unreasonably dangerous road condition, (2) failing to correct an unreasonably dangerous road condition, and (3) failing to utilize reasonable methods of warning motorists of the unreasonably dangerous road condition.

The defendants' answers denied that they had been negligent and alleged that the proximate cause of the injuries sustained by the plaintiff's decedent and of his death was his contributory negligence, which was more than slight as a matter of law and sufficient to bar any recovery in this action. The State also alleged that the wording of the contract was a discretionary function.

The trial court found for the plaintiff and against both defendants and fixed the damages at $180,663.63.

Both defendants have appealed and have assigned as error the failure of the trial court to find that the negligence of the plaintiff's decedent was more than slight as a matter of law and sufficient to bar any recovery in this action.

For the purpose of this opinion, we assume that the trial court's finding that both defendants were negligent is supported by the record. We direct our attention to the finding of the trial court that

Plaintiff's decedent was placed in a sudden emergency and position of danger which was not due to any negligence on his part and he is not held to the same accuracy of judgment as is required under ordinary circumstances. In judging the conduct of Plaintiff's decedent in light of the sudden emergency doctrine, the Court finds that he was guilty of slight negligence under the circumstances.

. . . Any negligence of Plaintiff's decedent when compared to the negligence of the Defendants and each of them, was slight and the negligence of each Defendant when compared to any negligence of the Plaintiff's decedent was gross.

The findings of fact of the trial court in a proceeding under the State Tort Claims Act, §§ 81-8,209 et seq., will not be set aside unless such findings are clearly incorrect. *Oldenburg v. State*, 221 Neb. 1, 374 N.W.2d 341 (1985); *Shepard v. State of Nebraska*, 214 Neb. 744, 336 N.W.2d 85 (1983); *Wakenight v. State*, 212 Neb. 798, 326 N.W.2d 52 (1982). The same standard applies to the Political Subdivisions Tort Claims Act, §§ 13-901 et seq.—findings of the trial court will not be disturbed on appeal unless clearly wrong. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989); *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988).

Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury. *McMullin Transfer v. State*, 225 Neb. 109, 402 N.W.2d 878 (1987); *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d

309 (1984); *Mundy v. Davis*, 154 Neb. 423, 48 N.W.2d 394 (1951).

The record shows that the decedent's mother, Clara Fries, testified that while Old Highway 26 was under construction she had discussed the condition of the road with the plaintiff's decedent. Furthermore, Fries stated that she had warned the decedent of the dangerous dropoff at the edge of the road.

There was no direct evidence that the plaintiff's decedent had previously driven on Old Highway 26 while it was under construction. However, the accident occurred as the decedent was driving on the highway to his mother's house. Fries testified that during the 3 or 4 weeks preceding the accident, she cared for the decedent's children on weekends at her home in Minatare, Nebraska. She stated further that during this period, the decedent drove to her house in Minatare either Saturday night or Sunday morning to pick up his children. According to the testimony, the most direct route from the decedent's home to his mother's house was Old Highway 26.

A witness to the accident, Dorothy Steele, testified that she and her husband were proceeding westerly on the highway when they met the decedent's vehicle. Steele stated that as their vehicle approached the decedent's from the opposite direction, the decedent's vehicle was over the centerline by about a foot. In order to avoid a collision, her husband and the decedent steered their respective vehicles away from the centerline. According to Steele, the decedent, in returning to his lane of traffic, appeared to overcorrect, and his automobile drove off the pavement and onto the shoulder.

Dennis Richard, a Nebraska State Patrol sergeant who investigated the accident scene, testified that the right tires of the decedent's vehicle left the pavement at a point approximately 200 yards east of a sign indicating a sharp dropoff at the pavement edge. Nebraska State Trooper Thomas Parker, an investigating officer of the accident site who is an expert in the field of accident reconstruction, testified that the decedent's automobile was traveling at an estimated speed of 67 miles per hour when it left the pavement. Dr. Ronald Hensen, a consulting engineer and accident reconstructionist who testified on behalf of the plaintiff, estimated that the decedent's

automobile was traveling between 50 and 70 miles per hour when it left the pavement.

There was uncontroverted evidence that the decedent's vehicle traveled with its right wheels on the shoulder for a distance of 170 feet. The left wheels of his vehicle then left the pavement, and the decedent traveled another 217 feet with all four wheels on the shoulder. Then, instead of stopping to ascertain whether he could safely return to the pavement, and while, according to Officer Parker and Dr. Hensen, the decedent's automobile was proceeding at an estimated speed of 60 miles per hour, the decedent attempted to turn back onto the pavement. After proceeding another 95 feet while attempting to turn back onto the pavement one or two times, the decedent lost control of the automobile, and it then flipped over and rolled for 100 feet, where it began to roll down an embankment. It came to rest after rolling another 118 feet. According to Dr. Hensen, the decedent's automobile was going approximately 52 miles per hour when it started to flip over.

The foregoing evidence, which has been summarized, establishes that the plaintiff's decedent was guilty of contributory negligence which as a matter of law was more than slight when compared with the negligence of the defendants.

Neb. Rev. Stat. § 39-662 (Reissue 1984) provides:

> No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Any person shall drive at a safe and appropriate speed when . . . special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

As stated in *Circo v. Transit Auth. of City of Omaha*, 217 Neb. 497, 501, 348 N.W.2d 908, 910 (1984), quoting from *Murray v. Pearson Appliance Store*, 155 Neb. 860, 54 N.W.2d 250 (1952), " 'The driver of a motor vehicle has the duty to . . . take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance.' "

In this case, the evidence shows that the decedent had prior knowledge of the condition of the highway and of the sharp

dropoff along the edge of the pavement. The evidence also establishes that the decedent's automobile was traveling at approximately 50 to 67 miles per hour when it left the pavement. After his automobile had left the pavement, uncontroverted evidence establishes that the decedent traveled approximately 312 feet on the surface of the shoulder. According to the evidence, the decedent never attempted to bring his automobile to a stop. Instead, the decedent attempted to turn back onto the pavement while proceeding at an estimated speed of 60 miles per hour. As a result, he lost control of the automobile and flipped it over, which ultimately resulted in his death.

The reasonably prudent thing for the plaintiff's decedent to have done, after his automobile had been driven from the pavement and onto the shoulder, would have been to reduce his speed and, if necessary, stop so that he could determine whether it would be possible to safely drive back onto the pavement at that point. Instead, the decedent continued to drive at a relatively high rate of speed on the shoulder and attempted to turn back onto the pavement one or two times, with the result that he lost control of his automobile and was fatally injured.

In conclusion, the evidence establishes, as a matter of law, that the plaintiff's decedent was guilty of contributory negligence which was more than slight and was a proximate cause of the accident. The judgment of the trial court is reversed and the cause remanded with directions to dismiss the petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

WHITE, J., dissenting.

The majority has ignored our standard in reviewing a bench trial of a law action: " ' "[T]he Supreme Court does not reweigh evidence but considers the judgment in the light most favorable to the successful party . . . ." ' " *Zeller v. County of Howard*, 227 Neb. 667, 670, 419 N.W.2d 654, 656 (1988), quoting *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987). The trial court observed the demeanor of the witnesses, took into account their interests in the litigation, considered the corroborative value of their testimony, and weighed their credibility. The majority, by selecting pieces of

evidence and bits of testimony, uses these facts to find that the plaintiff's decedent was contributorily negligent as a matter of law. In so holding, the majority finds that the trial court was clearly wrong. I cannot agree.

Among the facts which the majority chooses to accept is the allegation that the plaintiff's decedent was aware of the conditions of the road because his mother testified that she discussed the road conditions with him. However, evidence also was presented which showed that the condition of the road and the placement of warning signs varied as construction proceeded from one phase to the next. The majority apparently believes that mere awareness of road construction can be construed as a factor in finding contributory negligence.

The majority has also chosen to believe the testimony of Nebraska State Patrol Sgt. Dennis Richard, who stated that the decedent's car left the pavement approximately 200 yards east of a sign indicating a sharp dropoff at the pavement edge. However, Sergeant Richard did not investigate the accident scene until the day following the accident. In accepting Richard's testimony, the majority overlooks the testimony of another driver, who reported that she saw no sharp dropoff signs before the accident, but did observe some the next day. Richard also observed the accident scene in the light of day, while other drivers and a highway superintendent reported that the new asphalt soaked up the light and made the pavement edge difficult to see at night.

The majority adopts the confusing testimony of Nebraska State Trooper Thomas Parker. While Parker testified that he saw no evidence of braking by the decedent, his testimony indicates that the decedent was traveling at 67 miles per hour when his car left the pavement. Parker also states that he agreed with the plaintiff's accident reconstruction expert that the decedent was traveling 52 miles per hour when his vehicle started to roll.

The majority gives little credence to the testimony of Ronald Hensen, the plaintiff's expert, who stated that a common reaction of the driver in a dropoff accident is to attempt reentry, since the driver is surprised and responds in fear. Hensen stated that reentry requires greater steering effort, and often the

vehicle will roll over or dart back across the road, spin around, and hit another car. Since most drivers have never experienced this type of accident, they are operating on adrenaline during such an accident, Hensen said.

The testimony of other drivers who had experienced dropoff accidents at the same site and of the witnesses who indicated the lack of warning signs is also disregarded by the majority.

The contributory negligence found by the majority relies on evidence which they interpret to indicate that the decedent was speeding, even though no evidence was presented which indicated that any advisory speed limit signs were posted in any part of the construction area.

The majority reaches a conclusion as to "[t]he reasonably prudent thing for the plaintiff's decedent to have done . . . ." It is mere conjecture for the court to determine what the decedent *should* have done. The entire accident took place in less than 7 seconds. As the trial court noted, the decedent was placed in a sudden emergency. The trial court's finding is not clearly wrong based on the evidence before us.

From this day forward, any individual who fails to react appropriately to a sudden emergency within a matter of seconds will be contributorily negligent. I cannot accept such a rule and would affirm the trial court's judgment for the plaintiff. I dissent.

SHANAHAN, J., joins in this dissent.