NICOLE MOORE, BY AND THROUGH HER NEXT FRIEND, EULISH MOORE, AND EULISH MOORE, INDIVIDUALLY, APPELLANTS AND CROSS-APPELLEES, v. STATE OF NEBRASKA ET AL., APPELLEES AND CROSS-APPELLANTS.

515 N.W.2d 423

Filed April 28, 1994.   No. S-91-593.

Van A. Schroeder, of Bertolini, Schroeder & Blount, for appellants.

Don Stenberg, Attorney General, and Royce N. Harper for appellees.

HASTINGS, C.J., BOSLAUGH, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

This is an action by Nicole Moore and Eulish Moore for damages against the State of Nebraska, the Nebraska Department of Social Services (DSS), and DSS Director Kermit R. McMurry, under the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1990). The plaintiffs' second amended petition sought recovery for their injuries arising out of the negligent placement of a foster child in their home.

Following a trial before the court, judgment was entered in

favor of the plaintiffs on May 2, 1991. The trial court found that there had been a failure on the part of the defendants to follow their regulations regarding advising foster parents and that the defendants failed to advise Eulish Moore and his wife of the foster child's criminal record in the juvenile court and his chemical abuse problems when they knew or should have known that those things existed.

The trial court awarded Nicole $10,500 for her mental pain and suffering. Eulish was awarded $600 for expenses of Nicole's therapy, $1,960 for future expenses for therapy for Nicole and himself, and $500 for his own mental pain and suffering.

The plaintiffs have appealed the judgment of the trial court, and the defendants have cross-appealed.

> The trial court's findings of fact in a proceeding under the State Tort Claims Act, § 81-8,209 et seq., will not be set aside unless such findings are clearly incorrect. *Koncaba v. Scotts Bluff County*, 237 Neb. 37, 464 N.W.2d 764 (1991).
>
> In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988). In reviewing a judgment awarded in a bench trial, an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

*Haselhorst v. State*, 240 Neb. 891, 893, 485 N.W.2d 180, 184 (1992).

When viewed in the light most favorable to the plaintiffs, the record shows the following facts:

Nicole is the daughter of Eulish and Kathleen Moore. On July 30, 1985, Nicole was 7 years old.

On July 30, 1985, Clarence Moore, Jr., (no relation to Eulish and Kathleen) faced charges in the Sarpy County Separate Juvenile Court for a felony burglary. Clarence, who was 15 years old, had previously been incarcerated at the Youth Development Center-Kearney and had just been paroled in the

spring of 1985.

Clarence's younger brother and sister were in foster care in Sarpy County, and their caseworker was Palistene Gray. Gray was contacted by Clarence's father, Clarence Moore, Sr., because he was concerned about what was happening to Clarence. Gray agreed to attend the proceeding in the juvenile court the morning of July 30, 1985, and Clarence was placed in the custody of DSS while Gray was at the hearing.

Kathleen Moore and Gray had become acquaintances because they worked in the same building. They had lunch together after Clarence had been placed in the custody of DSS. Gray explained to Kathleen that she was having trouble finding a foster home for Clarence and asked if Kathleen and her husband would be interested in taking him as a temporary placement.

Kathleen and Eulish had never been foster parents and were not licensed as such. Kathleen told Gray that she would ask her husband and let her know later. Eulish told Kathleen he wanted to talk with Gray before he would agree to take Clarence into their home.

When Kathleen and Eulish arrived home from their jobs on the evening of July 30, 1985, Gray was waiting in their home for them and had Clarence with her. After visiting with Gray and Clarence for about an hour, Kathleen and Eulish agreed to take Clarence.

Although Gray had access to information which indicated that Clarence had previous law violations and convictions in Douglas County Separate Juvenile Court for which he had been committed to the Youth Development Center-Kearney, she did not inform the Moores. Gray also did not tell them that at the time of his placement in their home, Clarence was on parole from the Youth Development Center and that he was facing charges in the Sarpy County Separate Juvenile Court for felony burglary.

The Moores were told Clarence was a "good kid" who was involved with the wrong crowd and needed parental guidance. Kathleen testified that if they had been informed of Clarence's criminal record, they would not have accepted him into their home.

While DSS did a criminal record check on Eulish and Kathleen, it did not investigate Clarence's background. If DSS had checked Clarence's records, it would have discovered that along with his record for criminal activity, Clarence had a history of alcohol and drug usage, and that he had exhibited inappropriate sexual behavior while undergoing evaluation at the Youth Development Center-Geneva, as well as during the period of time he was paroled from Kearney and living in the home of his father and siblings.

Clarence spent only three nights in the Moores' home. During this time, he sexually assaulted Nicole. The assaults occurred on three occasions and involved contact with no penetration of the victim. There was no physical injury to the victim, although the plaintiff claims that an examination by a physician disclosed some perineal irritation.

On August 2, 1985, Clarence left the Moores' home to spend the weekend with his father. The next contact the Moores had with him was a call from the Bellevue Police Department on August 4, 1985. The police asked if the Moores would be willing to accept the release of Clarence into their care following his arrest on new criminal charges. The Moores refused.

In January 1986, Nicole revealed to her parents that she had been sexually assaulted by Clarence. Nicole gave a statement to the Bellevue police and was examined by a physician. Clarence later pled guilty to three counts of third degree sexual assault.

The Moores sought the services of a therapist, Nancy Thompson, for emotional problems they observed in Nicole, including bed-wetting, clinging behavior, nightmares, emotional outbursts at school, being afraid of the dark, and sleeping with her parents. After Nicole completed her counseling, she joined a youth group at her church to address issues of self-image.

On December 16, 1989, Nicole was evaluated by Dr. Stephen Skulsky. At trial, he testified that Nicole had suffered a mild posttraumatic stress disorder and that she could be susceptible to "flash-backs" during times of stress, such as developmental and life-change experiences. On a scale of 1 to 10, Dr. Skulsky rated the assaults at about 2 to 3. Skulsky testified additional therapy of about 24 sessions would be beneficial to assist Nicole

in working through her problems associated with the sexual assaults and that future therapy might be necessary if Nicole faced very strong stresses.

At the time of trial, Nicole was an honor roll student and was involved in age-appropriate activities. She had good relationships with her family and friends.

Dr. Klaus Hartmann evaluated Nicole for the defendants. It was his opinion that Nicole had benefited from the therapy and support provided by her parents after the incident and that the victim was not suffering from posttraumatic stress.

Eulish testified that he suffered feelings of inadequacy for failing to protect his family. He became depressed and withdrawn from his family. At the time of trial, Eulish was seeing Dr. Larry Kimperman, of the Veterans' Administration Veterans' Outreach in Omaha, on a weekly basis. He expected to continue his therapy for about a year.

On cross-appeal, the defendants assign as error the trial court's (1) finding that there had been a failure on the part of the defendants to follow regulations in failing to advise the Moores of Clarence's background, (2) not admitting certain testimony by their psychiatrist, (3) finding that the sexual assaults were proximately caused by negligence of DSS, and (4) finding that there was no assumption of risk or contributory negligence on the part of Eulish.

Regarding their first assignment of error, the defendants argue that placing Clarence in the Moores' home was not negligent because it was an emergency placement. The defendants contend that there was no other placement available for Clarence and that Gray did not know anything about Clarence's criminal history.

> In order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988). These four essential elements are matters to be determined by the trier of fact. *Id.*

*Haselhorst v. State*, 240 Neb. 891, 897, 485 N.W.2d 180, 186 (1992).

Viewing the evidence in the light most favorable to the

plaintiffs, we find that the record supports the trial court's finding of negligence on the part of DSS.

DSS regulations require its staff to provide information, such as the foster child's criminal records, psychological problems, and chemical usage, to the foster family. DSS regulations also require

> [l]ocal or area office staff [to] perform the following intake activities for all wards the unit serves, regardless of where the child is placed:
>
> . . . .
>
> 5. Secure all available information such as social history, school, medical, and psychological reports from all available sources;
>
> 6. Obtain a medical and social history on the child as soon as possible;
>
> . . . .
>
> 9. Establish a case record containing . . . c. Social history and summary . . . g. Other applicable information such as . . . (2) Psychological or psychiatric records; (3) School records; . . . (5) Reports from other agencies that worked with the family and/or child . . . .

(Emphasis omitted.)

A "Child Abuse and Neglect Referral" on Clarence, dated June 3, 1985, was in the office of DSS on July 30, 1985, but Gray did not know about it. It contained information from Lutheran Family Social Services concerning Clarence, indicating that Clarence's father was schizophrenic and that Clarence was just back from "Kearney boys home" and was running around until late at night.

Gloria Gehrt of Lutheran Family Social Services provided the information for the referral. If Gray had contacted Gehrt on July 30, 1985, Gehrt would have been able to inform her that Clarence had demonstrated behavioral problems including chemical and alcohol usage. Gehrt was also aware that Clarence had made a hole in the wall of a shower to observe his younger sister while she bathed.

If Gray had checked the Douglas County Separate Juvenile Court records, she would have discovered an evaluation had been performed on Clarence at the Geneva training center. It

was documented through testing and interviews at Geneva that Clarence had been involved in an extensive amount of stealing and that he had been abusing chemicals for at least 9 months prior to August 3, 1984. The report further indicated that Clarence had made obscene gestures to female residents, which was characterized as "sexually inappropriate behavior." Clarence's parole officer, Melvin Washington, also had access to this information, as well as to additional reports from the Youth Development Center-Kearney; however, he was not contacted by Gray on July 30, 1985.

The trial court found that since the referral form on Clarence was in the DSS office on July 30, 1985, Gray had time available to discover information on him that should have been given to the Moores. The trial court further found that Gray could have made a phone call to determine other pertinent information regarding Clarence.

The defendants also assign as error the trial court's finding that their negligence proximately caused the plaintiffs' injuries. The defendants assert that even if Gray had obtained the information about Clarence's criminal background, her failure to disclose it to the Moores was not the proximate cause of the plaintiffs' injuries because based on the information available to her, Gray could not reasonably foresee that Clarence would go into the Moores' home and violate a child.

> We have said that the proximate cause of an injury is that cause which, in a natural and continuous sequence, without any efficient, intervening cause, produces the injury, and without which the injury would not have occurred. *Zeller v. County of Howard, supra; Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983).
>
> The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event if the event would have occurred without it. *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986).

*Haselhorst v. State*, 240 Neb. 891, 899, 485 N.W.2d 180, 187 (1992).

The trial court found that Gray did not have and should not have had knowledge of any unusual propensity by Clarence to commit sexual offenses; however, it concluded that did not defeat the plaintiffs' right to recover because Kathleen testified that if they had been informed about Clarence's criminal record, they would not have taken him into their home. The record supports the trial court's finding.

Next, the defendants contend that the trial court erred in excluding testimony from their expert witness, Dr. Hartmann, as to his opinion concerning whether a juvenile who had been involved in theft as part of a chemical abuse problem would be a higher risk as a possible sexual perpetrator as compared to the general population within the juvenile system. The trial court sustained the plaintiffs' objection as to relevance.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence, or the evidence tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992).

The fact that a juvenile who had been involved in theft as part of a chemical abuse problem would not be a higher risk as a possible sexual perpetrator as compared to the general population within the juvenile system does not make it more or less probable that the defendants' failure to inform the Moores of Clarence's criminal history proximately caused injury to the plaintiffs. The offered testimony of Dr. Hartmann was properly excluded as irrelevant.

The defendants' last assignment of error pertains to the trial court's finding that there was no assumption of risk or contributory negligence on the part of Eulish. The defendants argue that by accepting a 15-year-old male foster child into his home, Eulish assumed the risk of Clarence's sexual assault on Eulish's 7-year-old daughter.

In order to prevail on the theory of assumption of risk, the defendant has the burden to establish that the plaintiff (1) knew of the danger, (2) understood the danger, and (3) voluntarily exposed himself or herself to the danger that proximately

caused the damage. *Haselhorst, supra.*

The Moores had never been foster parents, nor had they ever been licensed as such. The only knowledge or ability to obtain knowledge of Clarence's criminal behavior lay with DSS. Kathleen testified that Clarence would not have been accepted in their home if they had been informed about his criminal behavior.

The trial court correctly rejected the defense of assumption of the risk.

The defendants also contend that Eulish was contributorily negligent in failing to provide adult supervision of his children and Clarence while he and his wife were at work.

> A plaintiff is contributorily negligent if "(1) he or she fails to protect himself or herself from injury, (2) his or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her injuries as a proximate cause." *Horst v. Johnson*, 237 Neb. 155, 161, 465 N.W.2d 461, 465 (1991). Whether contributory negligence is present in a particular case is a question for the trier of fact. *Center State Bank v. Dana, Larson, Roubal & Assoc.*, 226 Neb. 408, 411 N.W.2d 635 (1987).

*Haselhorst*, 240 Neb. at 902, 485 N.W.2d at 189.

While the Moores were at work, they left their 15-year-old son in charge. They also had a neighbor who was available if the children needed her.

DSS was aware that both of the Moores worked during the day and that their children were left home. DSS did not suggest that while Clarence was in the home, adult supervision was necessary.

Viewing the evidence in a light most favorable to the plaintiffs, we find that the record supports the court's finding that Eulish was not contributorily negligent.

The plaintiffs assign as error the trial court's (1) failure to award $400 in special damages for Dr. Skulsky's evaluation of Nicole and Eulish; (2) allowing testimony by Dr. Hartmann concerning Nicole's ability to finish high school and college, her chances to become employed, and her ability to date; (3) inadequate award for general damages to Eulish; and (4)

inadequate award for general damages for Nicole.

The trial court found that Dr. Skulsky's $400 fee was strictly for an evaluation and not for any therapy. The plaintiffs argue the trial court erred in its finding because Dr. Skulsky made recommendations for therapy based on his evaluation, but the plaintiffs were unable to follow through on his recommendations because of their finances.

The cost of medical or expert reports made in preparation of litigation is not a recoverable expense unless provided by statute or as a uniform course of procedure. *Southwest Trinity Constr. v. St. Paul Fire & Marine*, 243 Neb. 55, 497 N.W.2d 366 (1993). See, also, *Gross v. Johnson*, 174 Neb. 273, 117 N.W.2d 534 (1962). The trial court found that Skulsky's evaluation was made in preparation of the trial of this matter, and that finding is not clearly wrong.

During direct examination, the defendants' expert, Dr. Hartmann, was asked whether in his opinion Nicole would be able to finish high school, study in college, become employed, and date. Over the plaintiffs' objections as to foundation and relevance, Dr. Hartmann was permitted to answer and testified that in his opinion, Nicole is likely to meet those demands and do well in them.

The plaintiffs contend that the trial court erred in allowing Dr. Hartmann's testimony over their objections.

Dr. Hartmann is a child and adolescent psychiatrist. He made an independent examination of Nicole which included an interview with Eulish to get background information. Dr. Hartmann asked Nicole questions regarding her family life, schoolwork, and social life.

There was sufficient foundation for Dr. Hartmann to render an opinion concerning Nicole, and Nicole's ability to finish high school, study in college, become employed, and date is relevant to the issue of her recovery from the sexual assaults. The trial court did not err in permitting Dr. Hartmann to give his opinion on that subject.

Next, the plaintiffs complain that the amount of damages awarded to Eulish for his mental pain and suffering is inadequate.

The trial court awarded Eulish $500 for his mental pain and

suffering following his discovery of the assaults on his daughter. On the basis of the record in this case, we cannot say that the trial court's award is clearly inadequate.

Finally, the plaintiffs argue that the trial court erred in awarding an inadequate amount for Nicole's emotional distress.

The trial court awarded Nicole $10,500 for the emotional distress she suffered as a result of the defendants' negligence. In making this award, the trial court found that Nicole had made a good recovery and that she will do better in the future. The record supports the trial court's findings and award.

The judgment of the trial court is affirmed in all respects.

AFFIRMED.

WHITE, J., participating on briefs.
SHANAHAN, J., not participating.