JEFFREY DEWAYNE COTTON, APPELLEE AND CROSS-APPELLANT, V. GERING PUBLIC SCHOOLS, A POLITICAL SUBDIVISION AND NONPROFIT CORPORATION OF THE STATE OF NEBRASKA, APPELLANT AND CROSS- APPELLEE.

511 N.W.2d 549

Filed July 20, 1993. No. A-92-758.

Philip M. Kelly and Jerald L. Ostdiek, of Nichols, Douglas, Kelly, and Meade, P.C., for appellant.

Robert P. Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder, and Hofmeister, P.C., for appellee.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

SIEVERS, Chief Judge.
Jeffrey Dewayne Cotton received a verdict in the amount of

$32,435.42 against the Gering Public Schools (Gering) under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1987). Unsatisfied with the amount of damages awarded, Cotton moved for a new trial. The district court granted the motion for new trial, stating in its written order, "[i]t is clear that the award of damages is inadequate as a result of a mistake by the court." Gering has perfected its appeal to this court, claiming that the trial court erred when it set aside its judgment and ordered a new trial.

## FACTUAL BACKGROUND

On May 2, 1990, Cotton was a senior at Gering High School on the verge of graduation. He had begun taking shop classes in seventh grade and had continued through high school, including his senior year. His instructor, Robert Anderson, had taught Cotton as a junior and senior and described him as a "fine student" who was conscientious about his work and ·safety matters. Cotton was making a shelf as part of his shop work, and on the day of the accident, he was going to round the edges of a shelf brace using a router, which some witnesses said was the same as a shaper. There are hand-held routers and table routers. A table router is essentially a hand-held router mounted so that the spindle protrudes vertically through a flat work surface. The bit is attached to the spindle and operates at high revolutions to cut and shape the wood, referred to as the workpiece, when it is brought into contact with the rotating bit. When a hand-held router is used, the workpiece is normally affixed to the work surface in some fashion and the router is brought into contact with the wood.

Cotton found that he could not use the hand-held router because his workpiece was very small. His instructor, Anderson, suggested use of a homemade table router which was located in the shop where the students were working. Cotton had never used this machine before and had not seen it used, nor had he been instructed on the use of a table router. Nonetheless, the evidence is uncontroverted that Cotton was knowledgeable of two general principles applicable to many power tools, including a table router: (1) that the workpiece should be fed to the bit against its rotation and (2) that one using

the router should not reach over or across the bit.

The evidence is clear that the basis for the first principle is that a rotating piece of equipment with a cutting blade must be fed against the direction of the teeth, otherwise it will grab the workpiece and throw it out of the hands or "kick" it out. This is known as kickout, or kickback; if there is a meaningful difference between the terms, we cannot discern it from the record. We will use the term "kickout." The danger from kickout is that the hands can be pulled into the bit when it occurs. The second principle is that when the hands holding the workpiece are across the bit, pulling the workpiece into the bit, there will be an obvious natural tendency of the hands to go into the bit should kickout occur.

According to Cotton, Anderson made a demonstration pass of the workpiece on the router, with the power off, and told him to "keep [his] hands out and be careful." Cotton apparently started the first cut in the middle of the workpiece and completed it properly and successfully as Anderson watched from a short distance away. To do the second pass, Cotton changed his hands and fed the workpiece into the bit with the direction of rotation, and when it kicked out, his right hand went into the bit. Anderson did not stop or correct him for the second pass and testified that after watching to make sure that the first pass was made correctly, he was momentarily distracted by another student until he heard the kickout and Cotton's hand going into the machine.

Cotton sustained a severe injury to the middle finger of his right hand, resulting in an amputation through the middle bone of his middle finger. The physician described the site of the amputation as "[f]rom the end of the finger, it would be just before the second joint." Cotton experienced considerable pain at the time of the injury and during his recuperation. He was unable to write his final exams, but graduated. Cotton has returned to the sport of team roping. He was a state champion wrestler, and the evidence is in conflict as to whether he would have been a collegiate wrestler but for the injury. He works for his father in a cattle feedlot, and he describes difficulty with strength because of the absence of the finger, as well as problems with dexterity in handling tools and other fine

objects. He relates that cold weather bothers the injury. His mother and sister testified that Cotton experienced considerable emotional difficulties and some personality changes following the injury. Medical expenses resulting from the injury were $2,306.25.

Cotton's amended petition alleged negligence on the part of Gering in (1) instructing Cotton to use the router when Anderson knew or should have known that it was unreasonably dangerous, (2) not properly supervising Cotton, and (3) failing to give adequate instruction prior to or during the use of the router. Gering alleged that Cotton improperly used the router by pushing the workpiece into the router in the wrong direction and in failing to follow the instructions given by Anderson. Accordingly, Gering claimed that Cotton's action was barred by his contributory negligence.

Cotton introduced evidence from Allen Rogers, an experienced carpenter and cabinetmaker who was very familiar with power equipment, including routers. Rogers' testimony was that Cotton's workpiece was too small, forcing him to hold it with the tips of his fingers, creating an inadequate margin of safety. It was Rogers' opinion that Cotton would not have been able to hold onto the workpiece even if he had started against the rotation of the bit. Rogers testified that in his opinion the procedure should have been done using a hand-held router with the workpiece placed on sandpaper to hold it, or, if a table router was used, it should have been affixed to a "crutch" or "jig" which would allow the manipulation of the workpiece using the crutch or jig so as to maintain an adequate margin of safety between Cotton's hands and the bit.

Stephan Konz, a professor of industrial engineering from Kansas State University, also testified on Cotton's behalf. Konz' testimony centered on the homemade table router. Konz gave his opinion that it was not reasonably safe equipment. The homemade table router was not equipped with a starting pin to avoid kickout, there were no push blocks or stick utilized, nor was the operator protected from potential harm by use of simple machine guarding techniques and devices which had been available for at least 50 years and, in this case, could have been purchased and affixed for under $20. Konz was also

extremely critical of the instruction, and the lack thereof, provided to an inexperienced student. Finally, Konz testified that the table router violated a number of standards, including those from Underwriters Laboratories, Inc., and the National Safety Council. Konz conceded on cross-examination that Cotton should have known and apparently did know the importance of direction of rotation when using the router and that feeding a workpiece in the direction of rotation, as Cotton admitted he had done, was incorrect.

For its defense of the claim, Gering relied upon the testimony of the shop instructor, Anderson, who testified that the workpiece should be fed against the rotation and that the worker should not reach over or across the bit. Anderson said he was satisfied that Cotton was thoroughly familiar with the principles applicable to power tools. Anderson testified that if both of the principles we have detailed herein are violated at the same time, as was true at the time of Cotton's injury, the danger is compounded. Anderson agreed generally with Cotton's testimony as to how the table router came to be used. Anderson testified that he told Cotton not to go with the rotation because of kickout, demonstrated how to place his hands, and made one pass with the machine off. Anderson watched Cotton do the correct first pass, but was then distracted by another student for a few seconds, and he turned around in time to see the workpiece kickout and hear Cotton's finger go into the bit.

Gering also presented the testimony of Ernest Hall, an instructor from Chadron State College, who had taught Anderson. Hall provided further reinforcement for the principle that a workpiece must be fed against the direction of the bit, otherwise it will grab the workpiece, dragging the hands into the machine. Hall examined photographs of how Cotton had his hands positioned and testified that when the workpiece was pushed into the bit, it would be kicked out and the hand would be drawn into the bit. Hall was of the opinion that a guard would not have prevented the injury because the kickout would simply have resulted in the hand or fingers lifting the guard up. Hall's opinion was that Cotton's violation of the safety rules, of which he knew, and which were applicable to a number of power tools including the table router, was the

proximate cause of the injury.

## DISCUSSION

The standard of review of an order granting a new trial is whether the trial court abused its discretion. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990). An abuse occurs when the ruling is untenable such that it deprives a party of a substantial right and a just result. *Brooke v. Brooke*, 234 Neb. 968, 453 N.W.2d 438 (1990).

A motion for new trial should be granted only where there is an error prejudicial to the rights of the unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial and who has succeeded in securing a verdict on the facts in issue has a right to keep the benefit of that verdict. *Kumar v. Douglas County, supra*.

The statutory grounds for a grant of new trial are found in Neb. Rev. Stat. § 25-1142 (Reissue 1989), which we summarize as follows: (1) irregularity in the proceedings of the court which prevent a fair trial; (2) misconduct of the prevailing party; (3) accident or surprise, which ordinary prudence could not have guarded against; (4) excessive damages; (5) error in the assessment of the amount of the recovery where the action is "upon a contract, or for the injury or detention of property"; (6) the verdict is not sustained by sufficient evidence, or is contrary to the law; (7) newly discovered evidence; and (8) error of law at trial excepted to by the moving party.

The conclusion of the trial court in its "Order Granting New Trial," that "the award of damages is inadequate as a result of a mistake by the court," is not a statutory ground as identified above. However, following the granting of a new trial, Gering's attorney filed a request for certain specified findings of fact to be set forth in the court's ruling on the motion for new trial. Those findings concerned statements allegedly made by the trial judge in the unrecorded portion of the hearing and argument on the motion for new trial, which was off the record by agreement of counsel. Because of the result we ultimately reach, we need not set forth those allegations. Nonetheless, the trial judge entered a written ruling which denied Gering's motion. That ruling stated:

But it is clear that the movant is not asking for the court's conclusions of fact concerning its reasons for its ruling on the motion for new trial. If it were, the court would state them thus:

1. In evaluating the kinds of damage, the court failed to properly take into consideration the physical pain and suffering plaintiff <u>had already experienced</u> by the time of trial, and,

2. The court failed to properly evaluate the negligence of each party by comparing it with the negligence of the other party.

(Emphasis in original.) In denying the motion for findings of fact, the trial court further stated that "the request having been made soon enough after the decision was made that the court's memory of the <u>facts of the case and the court's conclusions of fact</u> is sufficiently retained. In addition, the bill of exceptions and the exhibits are available to refresh the court's memory." (Emphasis in original.)

Putting aside the procedural curiosities, the trial court's reasons for granting a new trial do not neatly fit within the statutory grounds in § 25-1142. To the extent that the reasons are grounds for a new trial, they can only fit under § 25-1142(6), which states that a new trial may be granted if the verdict is "not sustained by sufficient evidence, or is contrary to law."

A motion for new trial is a statutory remedy, and it can be granted by the court only upon the grounds specified by statute. *Owen, Administrator v. Moore*, 166 Neb. 226, 88 N.W.2d 759 (1958). Although *Owen, Administrator* involved a jury trial and this is a bench trial, the principle still applies that the successful litigant who has sustained the burden and expense of a trial is entitled to keep the benefit of the verdict unless there is prejudicial error in the proceedings by which it was secured. *Id.* That principle is found in *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990), which is a Political Subdivisions Tort Claims Act case and, therefore, on point with our factual situation.

In *Kumar*, the plaintiffs' son, Jeffrey Allen, was severely injured in a one-car accident which occurred when the vehicle

he was driving left a Douglas County road and rolled four times, throwing him from the vehicle, resulting in a compound depressed skull fracture which left him permanently disabled. The suit against Douglas County was premised upon the county's failure to properly maintain and sign the road, as well as causing it to intersect with another county road in a dangerous manner. The district court made findings of fact that the county was negligent in a number of respects in connection with the roadway but that Allen was negligent with respect to speed, lookout, and driving under the influence of alcohol, which defeated his recovery, as the court found his negligence to be more than slight. The plaintiffs filed motions for new trial, and after reviewing the transcribed testimony, the court made new findings of fact with respect to Allen's negligence and concluded that his was slight when compared with the negligence of the county, and thus, the motion for new trial was sustained. The plaintiffs filed a motion to require judgment on the findings, and the court did so, entering judgment in the amount of $807,500.

The Supreme Court reversed the district court's judgment in *Kumar*, reasoning that the district court had authority to grant a new trial "based on any of the causes found in Neb. Rev. Stat. § 25-1142 (Reissue 1989) which materially affect the substantial rights of the aggrieved party." 234 Neb. at 516, 452 N.W.2d at 24. Noting that the trial court appeared to have granted the plaintiffs' motion for new trial based on its conclusion that the first decision was not sustained by sufficient evidence or was contrary to law, the Supreme Court stated that it disagreed, as the district court's factual findings in a Political Subdivisions Tort Claims Act case will not be set aside unless "clearly incorrect." *Id*. at 517, 452 N.W.2d at 24. We quote from the court's opinion in *Kumar*:

> Accordingly, under the foregoing principles of law, the court determined the facts and causation, and if there is evidence to support the trial court's original findings, then those findings and the court's original entries of judgments for the defendant cannot be clearly incorrect and an order granting a new trial based on insufficient evidence would be erroneous. Testimony from both the

plaintiffs' and the defendant's expert witnesses regarding the existing warning, speed of the car, and cause of the accident, if believed, would have sufficiently supported specific findings and judgments for either plaintiffs or defendant. The original decisions of the trial court are neither contrary to law nor lacking sufficient evidence.

*Id*. at 517, 452 N.W.2d at 25.

Consequently, the court held that there was no basis under § 25-1142 to justify granting a new trial and that the defendant had a right to keep the benefit of its first judgment. The Supreme Court found that the trial court in *Kumar* had abused its discretion in granting the plaintiffs' motions for new trial. We find *Kumar* to be determinative of this appeal.

Returning to the record before us, we find the evidence sufficient to support a finding of negligence and proximate cause on the part of Gering. In fact, for purposes of appeal, Gering so concedes in its brief. The evidence is sufficient to establish that the homemade table router was unreasonably dangerous, as it was not equipped with a starting pin or guard and was situated at an excessive height. The evidence is also sufficient to establish a lack of proper instruction in a number of respects, including the failure to effectively demonstrate the machine before usage and the failure to instruct on the use of jigs, crutches, or push sticks. The evidence is also sufficient to establish proximate cause, as it is clear that had a jig been used, as the carpenter Rogers said was appropriate and reasonable, Cotton's hand would never have been in a position to be injured by the bit. In fact, the very purpose of a jig is to enable one to work on a small piece of wood in a safe manner.

There is also clearly sufficient evidence to support a finding of negligence on the part of Cotton, as he was thoroughly familiar with the two fundamental principles of the use of power tools. He knew that the workpiece had to be introduced against the rotation of the bit and that he should not reach over the bit to draw the workpiece into the bit with his hands. Cotton admitted violating these two principles. The testimony of the defense witnesses, Anderson and Hall, was that a cut could be made on this workpiece in a safe manner so long as one did not violate these two rules and that as a result of Cotton's violation,

the injury occurred.

The trial court specifically found that the router table was not reasonably safe and that Gering did not properly supervise Cotton. The court also found that Cotton was contributorily negligent, but nonetheless entered a verdict in the amount of $32,435.42.

In order to grant a motion for new trial, the district court had to find that its original verdict was "clearly incorrect"; however, such a finding was not possible when there was sufficient evidence to support the verdict. There is no question that there is evidence to support a finding of negligence on the part of Gering, but there is also abundant evidence of Cotton's violation of safety rules, which could be considered negligence that proximately caused or contributed to the injury. In fact, in our view, a different fact finder might conclude that Cotton's negligence barred his recovery. The award of damages is not facially inadequate nor clearly incorrect. There were no lost wages proven, the medical expenses total less than $2,400, and the verdict is well in excess of the special damages, which clearly allows for consideration of pain and suffering, disfigurement, permanent disability, and loss of earning capacity.

With respect to pain and suffering, the award of damages is peculiarly within the fact finder's determination. "There is no yardstick by which damages for pain and suffering can be measured and compensated. If the verdict of the jury bears a reasonable relationship to the injuries sustained, the court will not disturb it." *LeMieux v. Sanderson*, 180 Neb. 311, 317, 142 N.W.2d 557, 562 (1966). Where the trial court acts as the fact finder, we believe the same standard should apply.

We believe the authority of the trial court to strip the successful party of its verdict is limited to the grounds set forth in § 25-1142. A court's "change of mind" does not comport with any requirement of the statute when the evidence in the record supports the original judgment. As in *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990), we find no basis under § 25-1142 to justify granting a new trial, and therefore, we conclude that the district court abused its discretion in doing so.

Accordingly, we reverse the district court's order granting a

new trial, and the cause is remanded with directions to reinstate the verdict for Cotton in the amount of $32,435.42.

REVERSED AND REMANDED WITH DIRECTIONS.